David L. **HEILMAN** and E-C Tape Service, Inc., a Wisconsin Corporation, Plaintiffs,

v.

Edward H. **LEVI**, Attorney General of the United States of America, his agents, servants, employes, attorneys, successors and all those persons in active concert or participation with them, Defendants.

Civ. A. 75-C-117.

United States District Court,
E. D. Wisconsin.

April 28, 1975.

Robert H. Friebert, Thomas W. St. John, Milwaukee, Wis., for plaintiffs.

Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This matter is presently before the Court on plaintiffs' motion for a temporary restraining order and preliminary injunction. Plaintiffs' complaint seeks declaratory and injunctive relief with respect to a threatened federal criminal prosecution of the plaintiffs for alleged violations of 17 U.S.C. § 101(e) as amended in Public Law 92–140, the Sound Recording Act of 1971. In addition, plaintiffs have requested the convening of a three-judge court pursuant to 28 U.S.C. § 2282, if 17 U.S.C. § 101(e) is construed so as to allow a criminal prosecution of the plaintiffs. Following a hearing held on March 26, 1975, the Court took plaintiffs' motions under advisement. Having fully considered the briefs and arguments of the parties, this Court concludes that plaintiffs' motion for a temporary restraining order and preliminary injunction

must be denied, and that plaintiffs' constitutional challenge to § 101(e) is insubstantial and therefore a three-judge court need not be convened.

### I.

The plaintiff, David L. Heilman, resides in the Eastern District of Wisconsin and is president of the plaintiff corporation E–C Tape Service, Inc. Plaintiff, E–C Tape Service, Inc., is a corporation organized and existing under the laws of the State of Wisconsin with corporate headquarters in the Eastern District of Wisconsin. The defendant, Edward H. Levi, is Attorney General of the United States of America. This suit is brought against the Attorney General in his official capacity and against his agents, servants, employees, attorneys and successors and all those persons in active concert or participation with them.

Plaintiffs are "tape pirates" or duplicators as they prefer to be called. Plaintiffs purchase records and tapes, manufactured by others, on the open market and then duplicate or copy the recordings on their own sound equipment and offer the duplicated recordings for sale to the general public at a price well below the retail price of the original recordings. A "tape pirate" need only purchase a single legitimate sound recording and reproduce it. The "pirate" bears none of the costs of arranging and recording the music and because pirates copy only successful recordings, they bear none of the risk of failure to which legitimate record companies expose themselves in acquiring musical rights and marketing music with unknown popular appeal.

Plaintiffs are presently engaged in duplicating recordings "fixed" prior to February 15, 1972. That date is important because Congress has given federal copyright protection only to those sound recordings "fixed" subsequent to February 15, 1972. Thus the sound recordings which plaintiffs are duplicating are not themselves protected by a copyright. With respect to all recordings used by

them, plaintiffs have paid or tendered to the composition copyright holder the two cent royalty to which the musical composer is entitled if plaintiffs, as tape pirates, come within the compulsory licensing provision of 17 U.S.C. § 1(e). Certain publishing companies have accepted the payments (27 in number), while others (127 in number) have refused to accept the tendered payments. In order to adequately understand how this particular lawsuit arose and the positions taken by the parties, it is necessary to review the development, amendments and interpretations of the federal copyright statutes involved.

## II.

Congress extended federal copyright protection to composers and publishers of original musical compositions for the first time in 1831. Act of Feb. 3, 1831, Ch. 16, 4 Stat. 436. Under this Act an individual who possessed the copyright had the exclusive right to sell, among other things, "copies" of the musical score. In response to the Supreme Court's interpretation of the 1831 Act in White-Smith Music Publishing Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct 319, 52 L.Ed. 655 (1908), Congress enacted the Copyright Law of 1909, Pub.L. 349, Chapter 320, 35 Stat. 1075, Act of March 4, 1909 as codified at 17 U.S.C. § 1(e). In the *White-Smith* decision, the Supreme Court held that mechanical reproductions such as perforated piano rolls and records were not "copies" of the composition from which they were reproduced, but were mere component parts of the machine which executed the composition. Therefore, the Supreme Court held that composers did not have any copyright interest in mechanical reproductions of their musical compositions. In response to this decision, Congress extended the copyright interest of the composer to "mechanical reproductions" of his composition in 1909, the year following the *White-Smith* decision. Act of March 4, 1909, Pub.L. 349, Chapter 320, 35 Stat. 1075 as codified at 17 U.S.C. § 1(e); 43 Cong.Rec. 3765-3767.

Section 1(e) of Title 17 provides in part:

"Any person entitled thereto * * * shall have the exclusive right:

* * * * * *

"(e) To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: *Provided, That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, * * *.*" (Emphasis added).

At the same time, Congress, fearful of creating a monopoly within the recording industry, added a compulsory licensing provision to 17 U.S.C. § 1(e) which provides that:

" * * * as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; * * *".

The composer is thus given the right to select the licensee who will originally produce a record of the musical work but thereafter any other manufacturer can also record the composition pursuant to this compulsory licensing provision upon the payment of the two cent fee to the copyright proprietor.

Section 1(e) of Title 17 was implemented by § 101(e) of the 1909 Copyright Act which provided in part:

"Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work upon the parts of musical instruments serving to reproduce mechanically the musical work, then in case of infringement of such copyright by the unauthorized manufacture, use, or sale of interchangeable parts, * * * no criminal action shall be brought, but in a civil action an injunction may be granted upon such terms as the court may impose, and the plaintiff shall be entitled to recover in lieu of profits and damages a royalty as provided in section 1, subsection (e), of this title: * * *."

Therefore, the state of the federal copyright law with respect to mechanical reproductions of recordings from 1909 until the Sound Recording Act of 1971, Public Law 92-140, can be summarized as follows:

(1) The composer or publisher was entitled to a composition copyright which included mechanical reproductions of his composition, 17 U.S.C. § 1(e);

(2) No copyright existed with respect to the mechanical reproductions themselves, i. e., records, piano rolls, tapes; only the compositions used in the records or tapes were protected;

(3) Once the owner of the composition copyright allows another to mechanically reproduce the musical work, any other person may make a "similar use" of the composition upon the payment of two cents to the composition copyright holder. 17 U.S.C. § 1(e).

(4) No criminal action would lie with respect to infringement of the composition copyright by unauthorized mechanical reproduction. 17 U.S.C. § 101(e).

On October 15, 1971, Congress enacted the Sound Recording Act of 1971, Pub.L. 92-140, 85 Stat. 391. First, the 1971 amendments added subsection (f) to § 1 of Title 17. Subsection (f) grants to the producer of a sound recording a copyright in the recording itself to be effective February 15, 1972. Thus all recordings "fixed" subsequent to February 15, 1972, are now protected from "piracy" by their own copyrights. Pre-February 15, 1972, recordings still have no independent copyright protection of their own.

The second principal aspect of Public Law 92-140 and the aspect under consideration in this lawsuit was an amendment to § 101(e) as it existed in the 1909 Copyright Act. 17 U.S.C. § 101(e) was amended to provide the following:

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

"(e) Interchangeable parts, such as discs or tapes for use in mechanical music-producing machines adapted to reproduce copyrighted musical works, shall be considered copies of the copyrighted musical works which they serve to reproduce mechanically for the purposes of this section 101 and sections 106 and 109 of this title, and the unauthorized manufacture, use, or sale of such interchangeable parts shall constitute an infringement of the copyrighted work rendering the infringer liable in accordance with all provisions of this title dealing with infringements of copyright and, in a case of willful infringement for profit, to *criminal prosecution* pursuant to section 104 of this title. * * *". (Emphasis added).

The effect of this amendment is to remove the prohibition of criminal actions contained in the former § 101(e). Section 101(e), as amended, now provides that the "unauthorized" manufacture, use or sale of mechanical reproductions shall constitute infringement of the composition copyright and where willful and for profit criminal sanctions are allowed pursuant to 17 U.S.C. § 104. This aspect of Public Law 92-140 became effective immediately upon enactment. With

this statutory history and background it becomes possible to explain how the present action arose and the principal issues it presents.

### III.

Subsequent to the passage of the Sound Recording Act 1971, four Circuit Courts of Appeal, interpreting the 1909 Copyright Act, held that tape "pirates" cannot avail themselves of the compulsory licensing provision of 17 U.S.C. § 1(e) because piracy or duplication does not constitute a "similar use" of the composition and therefore their activities constitute infringement of the composition copyright even where the statutory two cent fee is paid. Duchess Music Corp. v. Stern, 458 F.2d 1305 (9th Cir. 1972) cert. den. sub. nom. Rosner v. Duchess Music Corp., 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285 (10th Cir. 1974) aff'd on rehearing en banc; cert. den. sub. nom. Colorado Magnetics v. Edward B. Marks Music Corp., 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975); Jondora Music Publishing Co. v. Melody Recordings, Inc., 506 F.2d 392 (3rd Cir. 1974); Fame Publishing Co. Inc. v. Alabama Custom Tape, Inc., 507 F.2d 667 (5th Cir. 1975).

The compulsory licensing provision of § 1(e) provides that anyone who properly invokes the licensing provision "may make *similar use* of the copyrighted work." (Emphasis supplied.) The result reached by the four Circuit Courts of Appeal revolves around the interpretation of the phrase "similar use." The first case to construe the language of the 1909 Copyright Act is Aeolian Co. v. Royal Music Roll Co., 196 F. 926 (W.D. N.Y.1912). In *Aeolian* a piano roll manufacturer having a license to certain musical compositions on its perforated piano rolls sought an injunction against a competitor who was duplicating the rolls. In granting the injunction the court stated, 196 F. 926 at 927:

"The provision of the statute (section 1e) that 'any other person may

make *similar use of the copyrighted work'* becomes automatically operative by the grant of the license; but the subsequent user does not thereby secure the right to copy the perforated rolls or records. He cannot avail himself of the skill and labor of the original manufacturer of the perforated roll or record by copying or duplicating the same, but must resort to the copyrighted composition or sheet music, and not pirate the work of a competitor who has made an original perforated roll."

Each of the four Circuit Courts reviewed the legislative history of the 1909 amendments, discounted the legislative history of the 1971 amendments and gave favorable consideration to the interpretation of the phrase "similar use" in Aeolian Co. v. Royal Music Co., supra. In Duchess Music Corp. v. Stern, 458 F. 2d 1305 (9th Cir. 1972), the Ninth Circuit citing and following *Aeolian*, supra, concluded that defendant, as a tape "pirate" could not invoke the compulsory licensing provision as a sanction for her activities:

"The statute provides that anyone who properly invokes the license provision 'may make *similar use* of the copyrighted work.' (emphasis supplied). Rosner admits that she duplicates appellants' copyrighted compositions. She does not make 'similar use' of them, she makes exact and identical copies of them. This is clearly outside the scope of the compulsory license scheme." 458 F.2d at 1310.

Similarly in Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 289 (10th Cir. 1974), in discussing the phrase "any other person may make similar use of the copyrighted work" the Tenth Circuit stated:

"This means, to us, that one who complies with royalty payment called for by the statute, though not having any authorization from the copyright owner, may nonetheless then 'use,' not a third party's record, but the copyrighted composition which has been

characterized as the 'raw material,' in a manner 'similar' to that employed by the recording company which did have authorization from the copyright owner. There is, of course, nothing in the statute which affirmatively authorizes Magnetics to duplicate and copy the recording of one licensed by the copyright owner to reproduce his composition. However, under the statute Magnetics may 'use' the copyrighted composition in a manner 'similar' to that made by the licensed recording company. All of which means, to us, that Magnetics may make its own arrangements, hire its own musicians and artists, and then record. It does not mean that Magnetics may use the composer's copyrighted work by duplicating and copying the record of a licensed recording company. Such, in our view is not a *similar use*." 497 F.2d at 288.

The reasoning and interpretations of the *Duchess* and *Marks* courts was soon adopted in decisions of the Third and Fifth Circuits. Jondora Music Publishing Co. v. Melody Recordings, Inc., 506 F.2d 392 (3rd Cir. 1974); Fame Publishing Co. Inc. v. Alabama Custom Tape, Inc., 507 F.2d 667 (5th Cir. 1975). On the basis of these cases this court concludes that "tape pirates" are not entitled to avail themselves of the compulsory licensing provision of 17 U.S.C. § 1(e).

Following the Supreme Court's denial of certiorari in the *Marks* case, cert. den. sub nom. Colorado Magnetics v. Edward B. Marks Music Corp., 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975), the defendant Edward H. Levi, through his agent, John Murphy, Chief of the Regulations Section of the Department of Justice, publicly announced the Department's intention to apply the four Circuit Court decisions prospectively and to initiate criminal investigations and prosecutions under § 101(e) and § 104 of Title 17 as amended by Public Law 92–140, the Sound Recording Act of 1971. The Justice Department determined that the interpretation given 17 U.S.C. § 1(e) by the four Circuit Courts

of Appeal in the civil context carries over to § 101(e) as amended in 1971 and renders tape pirates such as plaintiffs criminally liable under § 101(e) even where the statutory two cent royalty is tendered. Since tape pirates cannot avail themselves of the compulsory licensing provisions of 17 U.S.C. § 1(e), the Justice Department has reasoned that their activities constitute infringement of the composition copyright and where willful and for profit, the activities of pirates fall within the criminal provisions which were added in 1971.

Public notice of this decision and determination was given through the trade press to the plaintiffs and all others engaged in similar practices. The decision to prosecute was to be enforced prospectively only and applies only to piracy activities subsequent to January 20, 1975, the date of denial of certiorari in the *Marks* case, supra. The present lawsuit is a result of this public threat of criminal investigation and prosecution of the plaintiffs. In their complaint, plaintiffs seek the following: (1) a declaratory judgment to the effect that 17 U.S.C. § 1(e), § 101(e) and § 104 are inapplicable to duplicators of songs "fixed" prior to February 15, 1972, who tender the two cent royalty to the composition copyright holder; (2) a declaratory judgment to the effect that any interpretation of § 101(e) of Title 17 which makes plaintiffs criminally liable for duplicating sound recordings of songs fixed prior to February 15, 1972, upon the tendering of the two cent compulsory licensing fee would render § 101(e) unconstitutionally vague and (3) interlocutory and permanent injunctive relief enjoining defendants from prosecuting plaintiffs for alleged violations of 17 U.S.C. § 101(e) or § 104.

### IV.

The issue presented to the Court by plaintiffs' motion is whether 17 U.S.C. § 101(e) is applicable to tape pirates who tender the two cent licensing fee to the composition copyright holder. The parties have agreed that at the time the Sound Recording Act of 1971 was before

the Congress, many members of Congress and the Department of Justice assumed that unauthorized duplications of recordings were not prohibited by the existing copyright laws of 1909. They were operating under the impression that "tape pirates" could avail themselves of the compulsory licensing provision of § 1(e) of Title 17, and that therefore, their activities did not constitute infringement of the composition copyright if the statutory fee was paid. Consequently, Congress believed that neither the civil remedies nor the newly permitted criminal sanctions would be available with respect to tape pirates complying with 17 U.S.C. § 1(e). However, as the four Circuit Court opinions demonstrate, the compulsory licensing provision is *not* available to tape pirates and thus their "use" of musical compositions constitutes, at the very least, civil infringement of the composition copyright.

Plaintiffs' principal contention in this lawsuit is that the interpretation given to § 101(e) of Title 17 as amended in 1971 by the defendants directly conflicts with the intent of Congress in amending § 101(e). Plaintiffs assert that because Congress did not believe that tape pirates infringed the composition copyright if they paid the compulsory licensing fee, it did not intend the criminal sanctions, permitted for the first time under § 101(e), as amended, to apply to pirates who pay the statutory fee. Consequently plaintiffs assert that the sole effect of the 1971 amendment to § 101(e) was to permit criminal sanctions against tape pirates who fail to tender the compulsory licensing fee.

 The dispositive question before this Court is the proper construction of 17 U.S.C. § 101(e) and specifically whether the language of § 101(e) embraces tape pirates who tender the compulsory licensing fee. Plaintiffs have furnished the Court with numerous excerpts from the legislative history of the Sound Recording Act which indicate that many members of Congress were of the opinion that neither civil nor criminal remedies were available sanctions against tape pirates. However, the opinions of legislators should not be taken as persuasive of legislative purpose. In construing a statute, its meaning must be sought in the language employed. If the language is plain, it is the duty of the Court to enforce the law as written. Durkee Famous Foods, Inc. v. Harrison, 136 F.2d 303 (7th Cir. 1943). Resort to legislative history, such as is suggested by plaintiffs, has a place in judicial construction of statutes only where necessary to resolve a patent ambiguity in the statute. American Community Builders, Inc. v. C. I. R., 301 F.2d 7 (7th Cir. 1962). As stated in Mandel Bros. Inc. v. F.T.C., 254 F.2d 18, 22 (7th Cir. 1958):

" * * * when the language used in a statute is clear and unambiguous its legislative history cannot control the interpretation as 'such aids are only admissible to solve doubt and not to create it.' "

Section 101(e) of Title 17 as amended in 1971, provides in part:

" * * * the unauthorized manufacture, use, or sale of such interchangeable parts shall constitute an infringement of the copyrighted work rendering the infringer liable in accordance with all provisions of this title dealing with infringements of copyright and, in a case of willful infringement for profit, to criminal prosecution pursuant to section 104 of this title. * * *."

This statute simply provides that where one infringes the copyright and the infringement is done "willfully" and "for profit" criminal sanctions are available. Essentially plaintiffs request this Court to read all sorts of things into this statute which are simply not there. There is nothing to indicate that Congress "intended" the type of limited utilization of the criminal provisions in § 101(e) as is suggested by plaintiffs, although Congress may have believed that such a limitation "existed" by reason of their interpretation of the 1909 Copyright Act. While Congress and the Department of Justice may have been operating under a misconception of what constituted "in-

fringement", reading § 101(e) as it existed from 1909 to 1971 together with the amendment to the section in 1971, the language and intent of Congress is unambiguous. Prior to 1971, § 101(e) provided that only civil remedies were available in case of infringement and criminal remedies were specifically prohibited. The 1971 amendment was simply intended to remove the former prohibition of criminal sanctions and to make the remedies for unauthorized manufacture of records containing copyrighted music the same as those applicable to infringements generally,—that is, to allow criminal sanctions where the infringement is "willful" and "for profit." The intent of Congress drawn from the statutes themselves was simply to expand the *remedies* available to the owner of the composition copyright in case of infringement and is not concerned with what acts do or do not constitute *infringement*. The four Circuit Court decisions are dispositive of what constitutes infringement. Based on these reasons, this Court concludes that 17 U.S.C. § 101(e) is applicable to duplicators of songs "fixed" prior to February 15, 1972, even where they tender the two cent royalty to the composition copyright holder and that consequently plaintiffs' motion for a temporary restraining order and preliminary injunction must be and is denied.[1]

### V.

In the alternative, plaintiffs request that, if § 101(e) of Title 17 is construed so as to allow criminal prosecution of the plaintiffs, a three-judge court be convened pursuant to 28 U.S.C. § 2282,[2] based on their claim that, given such a construction, § 101(e) is unconstitutionally vague. This Court concludes that the constitutional challenge to § 101(e) raised by the plaintiffs is insubstantial and therefore a three-judge court need not be convened.

 Due process requires that a statute is void for vagueness if its prohibitions are not clearly defined. Laws must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may steer between lawful and unlawful conduct. Vague laws may trap the innocent by not providing fair warning. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

Plaintiffs contend that the meaning of "unauthorized" as used in § 101(e) is so uncertain as to render the statute unconstitutionally vague. This claim is also essentially grounded on the assertion that Congress believed tape pirates to be authorized under the compulsory licensing provision. However, this Court finds no uncertainty in the term "unauthorized." Section 1 of the Copyright Act grants to the composition copyright owner the exclusive right to copy his work. There is one limited exception to this exclusive right, the compulsory licensing provision of 17 U.S.C. § 1(e). Once a copyright holder uses or permits another to use his composition, then any other person can make a "similar use" of the composition upon complying with § 1(e). Since similar use is the whole of the exception to the exclusive rights of the copyright holder, any use which is neither "similar" nor explicitly authorized is "unauthorized."

Nor can plaintiffs contend that they have not had a reasonable opportunity to know what is prohibited so that they can steer their conduct between what is lawful and unlawful. Public notice of de-

---

1. By resolving the interpretation of § 101(e) on the merits, it is unnecessary for the Court to discuss the problems inherent in enjoining "threatened" federal criminal prosecutions and the heavy burdens of equitable relief which plaintiffs would be required to meet to sustain the extraordinary relief requested.

2. 28 U.S.C. § 2282 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title. June 25, 1948, c. 646, 62 Stat. 968.

fendants determination was given to the plaintiffs through the trade press and the decision to prosecute was prospective only. This Court simply fails to understand how plaintiffs can claim that the construction given to § 101(e) violates any of their "constitutional" rights. Therefore plaintiffs' vagueness challenge raises an insubstantial constitutional question with respect to 17 U.S.C. § 101(e) and a three-judge court is not required under 28 U.S.C. § 2282.

With respect to plaintiffs' motion for temporary restraining order and preliminary injunction, this decision and order shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52(a), of the Federal Rules of Civil Procedure.

It is therefore ordered that plaintiffs' motion for a temporary restraining order and preliminary injunction be and it hereby is denied.

It is further ordered that plaintiffs' motion for the convening of a three-judge court pursuant to 28 U.S.C. § 2282 be and it hereby is denied.