[Civ. No. 48806. Second Dist., Div. Three. Nov. 30, 1977.]

A & M RECORDS, INC., Plaintiff and Respondent, v.
DAVID L. HEILMAN, Defendant and Appellant.

556

■■■■

## COUNSEL

David L. Heilman, in pro. per., for Defendant and Appellant.

Mitchell, Silberberg & Knupp, Howard S. Smith, Russell J. Frackman and David S. Gubman for Plaintiff and Respondent.

## OPINION

**COBEY, Acting P. J.**—Defendant, David L. Heilman, appeals from a judgment which: (1) incorporated the terms of an order permanently enjoining him from duplicating, advertising, shipping, or transporting within the State of California magnetic tapes or disc phonograph records embodying any part of any recorded performance sold by A & M Records, Inc., without the consent of A & M Records, Inc., and (2) decreed an award of $136,027.82 damages and costs in favor of A & M Records, Inc.[1] The appeal lies. (See Code Civ. Proc., § 904.1, subd. (a).)

Heilman contends that: (1) the trial court should have declined to exercise jurisdiction over this case; (2) summary judgment was improperly granted on the issue of his liability; (3) sanctions were improperly imposed in connection with discovery; (4) the injunctive relief granted conflicts with the commerce clause, the copyright clause, and the First Amendment to the United States Constitution; and (5) the basis for and calculation of damages were improper.[2]

---

[1]The injunction restrains Economic Consultants, Inc. as well as Heilman and the damage award was entered against defendants, Economic Consultants, Inc. and Heilman jointly and severally. Economic Consultants, Inc. has not appealed, however, and the judgment is final as to it.

[2]Heilman's contentions are set forth in greater detail in the discussion which follows. Certain additional unmentioned contentions of his have also been considered and have been determined to be without merit.

■■■■

We have examined these contentions and hold each of them to be without merit. Therefore we will affirm the judgment of the trial court.

## FACTS[3]

A & M Records, Inc. (hereafter A & M Records) is a California corporation which commercially manufactures and sells recorded musical performances in the form of disc phonograph records and prerecorded magnetic tapes. Heilman has admitted advertising and selling record and tape "albums" which included performances of songs duplicated from recordings manufactured by A & M Records without making payments to A & M Records or to any of the musicians involved.[4]

Heilman is the founder of Economic Consultants, Inc., now known as E-C Tapes, Inc. and doing business as E-C Tape Service (hereafter E-C Tapes). He made all major decisions respecting E-C Tapes' operations, including those at issue in this case.

In the latter part of 1971 Heilman and E-C Tapes began the business of advertising and selling pirated records and tapes. Records and tapes containing 16 selections were compiled for sale as "albums." Fifteen recorded performances owned by A & M Records[5] were duplicated and included without authorization in various albums sold by E-C Tapes. All of these performances were initially "fixed"[6] by A & M Records and the recordings first sold to the public prior to February 15, 1972.

---

[3]We construe the facts in the light most favorable to A & M Records, Inc. as the prevailing party below. (See *Hasson* v. *Ford Motor Co.,* 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857].)

[4]The unauthorized duplication of recordings is commonly known as "record piracy" or "tape piracy." (*Goldstein* v. *California* (1973) 412 U.S. 546, 549-550 [37 L.Ed.2d 163, 169-170, 93 S.Ct. 2303]; *Capitol Records, Inc.* v. *Erickson,* 2 Cal.App.3d 526, 528, fn. 2 [82 Cal.Rptr. 798, 40 A.L.R.3d 553]; Nimmer on Copyright (1976) § 108.4621, pp. 431-432.)

[5]The recorded performances owned by A & M Records and duplicated by E-C Tapes were entitled: "This Guys In Love With You;" "Close To You;" "We've Only Just Begun;" "Do You Know What I Mean;" "Wild World;" "It's Too Late;" "You Were On My Mind;" "Guantanamera;" "Whiter Shade of Pale;" "Look Of Love;" "Ticket To Ride;" "Superstar;" "Moon Shadow;" "Hello Hello;" and "A Man and A Woman."

[6]"A sound recording is 'fixed' when the complete series of sounds constituting the work is first produced on a final master recording that is later reproduced in published copies." (37 C.F.R. § 202.15A, subd. (b).) Since the recordings here involved were fixed and sold prior to February 15, 1972, they are not protected under federal copyright law, but are valid objects of state protection. (See *Goldstein* v. *California, supra,* 412 U.S. at pp. 552, 570 [37 L.Ed.2d at pp. 171, 181].) The Copyright Act of 1976 has no effect on the rights here in issue. (Pub.L. No. 94-553, § 101 (1976) 90 Stat. 2572.)

From 1971 through the middle of 1975 E-C Tapes made gross sales from pirated recordings of approximately $4,300,000. Gross receipts from the sale of albums, which included pirated recorded performances owned by A & M Records, were at least $729,337.11. On the basis of the percentage of A & M Records-owned performances contained on the albums sold, E-C Tapes obtained gross receipts from the sale of pirated A & M Records' performances of at least $80,000.

Heilman personally received at least $200,000 from the total piracy operations. In addition, E-C Tapes paid many of his personal expenses including paying for his apartment, car, and personal telephone.

E-C Tapes did not keep books or records breaking down sale of albums by geographical area. It was established, however, that substantial manufacturing operations were carried on in the State of California. The "master" recording and metal parts used to produce disc phonograph records of pirated recordings for sale to the general public, including those here in issue, were manufactured in California as well as a substantial number of the record discs themselves and the labels made for the records.

During the course of the proceedings in this case E-C Tapes twice, and Heilman once personally, violated the temporary restraining order and preliminary injunction issued by the trial court and were therefore adjudged in contempt of that court. An effort was made by Heilman to evade the restraining order and preliminary injunction in this case by, among other things, requiring customers in California to provide out-of-state addresses for "trans-shipment." In addition, Heilman and E-C Tapes violated injunctions issued against them by courts of the State of Wisconsin restraining them from engaging in record or tape piracy.

Defendant's operations were moved into the State of Illinois, where record piracy was illegal as well, but substantial record and tape piracy was nevertheless conducted. In May 1975 the Federal Bureau of Investigation executed a search warrant in Illinois and seized a substantial portion of E-C Tapes' pirated recordings. But the record piracy operations were again commenced and were still operating at the time of trial.

## DISCUSSION

### 1. *Forum Non Conveniens*

█ On the eve of trial on the issue of damages, after a summary judgment establishing Heilman's liability had been granted and discovery had been completed to the extent possible, Heilman moved to dismiss or stay the proceedings pursuant to the doctrine of forum non conveniens. The motion was denied. He contends that this ruling was an abuse of the trial court's discretion.

We disagree. Though Heilman did not designate for inclusion in the clerk's transcript any of the papers relating to this motion, it is clear from the record that the trial court acted within its discretion. As noted in part earlier A & M Records is a resident plaintiff, substantial manufacturing operations related to the record piracy at issue were carried on within the State of California and many of the relevant transactions occurred here. (See *Thomson* v. *Continental Ins. Co.,* 66 Cal.2d 738, 742-747 [59 Cal.Rptr. 101, 427 P.2d 765].)[7]

### 2. *Summary Judgment*

Heilman asserts that the partial summary judgment on the issue of his liability was improperly granted. Specifically he contends that: (a) the trial court did not consider his affirmative defense that A & M Records was involved in an illegal "tying arrangement" in violation of the Sherman Anti-trust Act, and (b) there could be no summary judgment on the issue of liability for unfair competition because it had not been established that Heilman "palmed off" his products as A & M Records' products.

### A. *Affirmative Defense*

█ A recorded performance embodies two distinct bundles of legal rights: (1) rights in the musical composition itself, the tune and lyrics,

---

[7]A & M Records asserts that review of the denial of a motion to dismiss for inconvenient forum may be only by mandamus. We believe that this assertion is incorrect in light of Code of Civil Procedure section 410.30, subdivision (b). (See 1 Witkin, Cal. Procedure (1977 pocket supp.) Jurisdiction, § 260, p. 262.)

and (2) rights in the recording "fixing" the performance of that musical composition. (Copyright Act of 1909 (17 U.S.C. § 1(e) and (f) (amendment added by Pub.L. No. 92-140 (1971) 85 Stat. 391), § 5(e) and (n) (amendment added by Pub.L. No. 92-140 (1971)), § 12, § 101(e), as amended by Pub.L. No. 92-140 (1971)); *Heilman v. Levi* (E.D.Wis. 1975) 391 F.Supp. 1106, 1108-1110; Nimmer on Copyright (1976) §§ 17, 35, 108.4621, pp. 73, 146.3-146.4, 432.) Recorded performances, however, cannot legally exist without the right to reproduce mechanically the underlying musical compositions. Early in this century it was recognized that if composers had an unlimited right to control the "mechanical reproduction" of musical compositions there was a danger of "establishing a great musical monopoly" in the mechanical reproduction of music. (H.R.Rep. No. 2222, 60th Cong., 2d Sess., p. 6 (1909).) Congress therefore incorporated into the 1909 Copyright Act a comprehensive plan to recognize the rights of composers yet "prevent the establishment of a great trade monopoly." (*Id.* at p. 9.)

A key element of this plan is the compulsory licensing provision. (*Id.* at pp. 6-9.) Once the owner of a copyrighted musical composition permits one recording to be made of a performance of that composition, the right to record that composition becomes nonexclusive and all persons may make "similar use" of the musical composition, provided they comply with the statutory requirements. (Copyright Act of 1909 (17 U.S.C. § 1(e)); Nimmer on Copyright (1976) § 108.3, pp. 420-421.)

Heilman asserts that the Harry Fox Agency, apparently the representative of the owners of the compositions involved, prevented his complying with the statutory requirements by refusing his tender of the statutory royalties. He contends that this conduct constitutes an affirmative defense because it was a monopolistic illegal tying arrangement. According to Heilman, "[t]he publisher of the underlying composition is simply saying to the re-re[c]order, you must *buy* a license from the owner of the performance before I will grant you a license for the words and music."

There is significant authority, however, that record piracy is not the "similar use" permitted by the compulsory license provision of the Copyright Act. (See *Heilman v. Levi, supra,* 391 F.Supp., and the cases cited therein at p. 1110.) The logic of these cases has been criticized. (See Nimmer on Copyright (1976) § 108.4621, pp. 431-434.3.) ■ But even assuming the correct rule is that the owners of the copyrights to the compositions should have accepted the tender of royalties, the only result

of this assumption would be that Heilman would have a defense to a copyright infringement action brought by the owners of the copyright in the musical compositions. A & M Records' action against Heilman for duplicating without consent *performances* embodied in A & M Records' recordings is independent of any action that the owners of the underlying compositions might bring against Heilman for copyright infringement. In short, Heilman's so-called "affirmative defense" is irrelevant to A & M Records' unfair competition claim. (See *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App. 675, 728-729 [39 Cal.Rptr. 64].)

### B. *Unfair Competition*

Heilman asserts that the summary judgment granted on the issue of his liability should be reversed because there remains a triable issue as to whether his actions constituted "palming off" of A & M Records' product. (See Code Civ. Proc., § 437c.) He contends that in order to show unfair competition it must be established that his action constituted "palming off."

As previously noted, Heilman has admitted, however, that without authorization he duplicated performances owned by A & M Records in order to resell them for profit. This conduct presents a classic example of the unfair business practice of misappropriation of the valuable efforts of another. Such conduct unquestionably constitutes unfair competition, even if there is no element of "palming off." (Civ. Code, § 3369, subd. (3); ·*Barquis* v. *Merchants Collection Assn.,* 7 Cal.3d 94, 108-113 [101 Cal.Rptr. 745, 496 P.2d 817]; *Capitol Records, Inc.* v. *Erickson, supra,* 2 Cal.App.3d at pp. 536-538; Annot., Unfair Competition By Direct Reproduction of Literary, Artistic, or Musical Property, 40 A.L.R.3d 566, 569-572, 578-580.)

### 3. *Discovery Orders*

A & M Records duly noticed Heilman to produce certain documents in Milwaukee, Wisconsin, on October 22, 1975 (some six weeks before the scheduled date of trial). His deposition there was also duly noticed for two days later. Heilman failed to produce any of the documents and also refused to answer any questions of substance on the constitutional ground that his answers might tend to incriminate him. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.)

In response to this conduct the court ordered that "[d]efendants Economic Consultants, Inc. and David L. Heilman are precluded from introducing at trial any documents listed in plaintiff's Notice to Appear at Trial and Notice to Produce Documents at Trial filed November 7, 1975 which they have not heretofore produced or which they do not produce at office of plaintiff's counsel in Los Angeles by 4:00 P.M. on November 26, 1975. Defendant David L. Heilman is precluded from testifying at trial respecting matters [*sic*] questions respecting which he refused to answer at his deposition on October 24, 1975."

Heilman was apparently able to comply substantially with this order insofar as production of documents prior to trial was concerned. The order precluding Heilman from testifying at trial respecting matters upon which he had refused to answer questions in discovery was interpreted by the trial judge as limiting the scope of Heilman's testimony only, and not that of any other witness.

Heilman argues nevertheless that these orders were improper. He contends both that the court could not make such orders without his first disobeying a court order and that these two orders constituted an abuse of discretion. We disagree.

## A. *Failure to Produce*

█ The order employed in response to Heilman's failure to produce certain documents in discovery was a conditional order. It only prevented him from introducing these documents at trial if he, contrary to the court's order, once again failed to produce them in Los Angeles by 4 p.m., November 26, 1975, approximately a week before the scheduled start of the trial.

When a party disobeys an order to produce documents "the court may make such orders in regard to the refusal as are just." (Code Civ. Proc., § 2034, subds. (a) and (b)(2).) So long as the penalty is appropriate to the dereliction and does not exceed the protection required to protect the interests of the party entitled to but denied discovery, its imposition is within the discretion of the trial judge. (*Stein* v. *Hassen,* 34 Cal.App.3d 294, 301 [109 Cal.Rptr. 321]; Thompson, *Sanctions in California Civil Discovery* (1968) 8 Santa Clara Law. 173 at p. 186.) Given the facts of this case and the imminent date of trial the court's action was appropriate, just, and within its discretion.

## B. *Preclusion of Testimony*

This is a case where the trial court was confronted by the "difficult problem" of a civil defendant who faces possible criminal prosecution involving the same facts as the civil action. (Cf. *People* v. *Coleman,* 13 Cal.3d 867, 884-885 [120 Cal.Rptr. 384, 533 P.2d 1024].) ■ On the one hand matters which are privileged are outside the scope of discovery and a court may not make an order compelling an individual to make responses which that person reasonably apprehends could be used in a criminal prosecution of him or which could at the least lead to evidence that might be so used. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15; Code Civ. Proc., § 2016, subd. (b); Evid. Code, § 930; *Maness* v. *Meyers* (1974) 419 U.S. 449, 464 [42 L.Ed.2d 574, 587, 95 S.Ct. 584]; *Black* v. *State Bar,* 7 Cal.3d 676, 685 [103 Cal.Rptr. 288, 499 P.2d 968].) ■ On the other hand the enactment of the Discovery Act of 1957 was intended to take the "game element" out of trial preparation and do away with surprise at trial. (See *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) The accomplishment of this purpose compels the court to prevent a litigant claiming his constitutional privilege against self-incrimination in discovery and then waiving the privilege and testifying at trial. Such a strategy subjects the opposing party to unwarranted surprise. A litigant cannot be permitted to blow hot and cold in this manner. (Cf. *Campain* v. *Safeway Stores, Inc.,* 29 Cal.App.3d 362, 365-366 [104 Cal.Rptr. 752]; see *International Tel. & Tel. Corp.* v. *United Tel. Co. of Fla.* (M.D.Fla. 1973) 60 F.R.D. 177, 186; *Securities & Exch. Com'n* v. *American Beryllium & Oil Corp.* (S.D.N.Y. 1969) 303 F.Supp. 912, 921.)

The action taken by the trial court was a fair and just resolution of the problem. It was not an abuse of discretion. Heilman was precluded from testifying at trial only on matters upon which he had asserted in discovery his privilege against self-incrimination. He was not prevented from testifying concerning matters as to which he had been forthcoming nor was he prevented from presenting documentary evidence or the testimony of other witnesses to support his defenses.

Heilman does not claim that the trial court's order was an inappropriate "juristic consequence" of his assertion in discovery of his constitutional privilege against self-incrimination. (See *Shepard* v. *Superior Court,* 17 Cal.3d 107, 116-117 [130 Cal.Rptr. 257, 550 P.2d 161]; *Baxter* v. *Palmigiano* (1975) 425 U.S. 308, 318 [47 L.Ed.2d 810, 821, 96

S.Ct. 1551].) As previously noted, though, he does assert that the court could not take such action against him without his first disobeying a court order. (See Code Civ. Proc., § 2034, subd. (b)(2).)[8]

But Code of Civil Procedure section 2019, subdivision (b)(1) provides with respect to depositions that "the court may make any . . . order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." This section grants the court the power to protect the deposing party as well as the party deposed from oppression—here the oppression that would flow from a waiver at trial of the privilege against self-incrimination that had been asserted to block discovery.[9] (See *Thoren* v. *Johnston & Washer,* 29 Cal.App.3d 270, 274 [105 Cal.Rptr. 276].) This interpretation is consistent with federal practice based on comparable provisions. (4A Moore's Federal Practice (2d ed. 1975) § 37.05, fn. 14, pp. 37-95 through 37-96.)

## 4. *Injunctive Relief*

Heilman contends that the portion of the injunctions restraining him in the State of California from advertising albums for sale which included selections duplicated from recordings sold by A & M Records: (a) violated the commerce clause to the United States Constitution (U.S. Const., art. I, § 8(3)) because it interfered with advertising on a national level; (b) violated the copyright clause to the United States Constitution (U.S. Const., art. I, § 8(8)) because it enjoined advertisements copyrightable under the federal Copyright Act; and (c) violated his First Amendment rights (U.S. Const., 1st Amend.) by enjoining commercial speech. These contentions will be discussed seriatim.

### A. *Commerce Clause*

■ All injunctive relief against Heilman was carefully circumscribed to restrain only Heilman's activities in, or aimed at, California. But it is

---

[8]Were Heilman correct in this assertion a trial court would be rendered powerless to deal with the situation. Since a court may not issue an order compelling incriminating testimony, there could be no court order for Heilman to disobey.

[9]We note also that Civil Code section 2019, subdivision (b)(1) provides in the following language for the imposition of monetary sanctions if such sanctions are deemed justified: "In granting or refusing such order the court may impose upon *either party* or upon the witness the requirement to pay such costs and expenses, including attorney's fees, as the court may deem reasonable." (Italics added.) This language supports the interpretation that the subdivision applies to both parties.

Heilman's contention that the injunctions violate the commerce clause by interfering with Heilman's national advertising.

There is no question, however, that state action to encourage and protect intellectual and artistic efforts is a legitimate exercise of local police power. (*Goldstein* v. *California, supra,* 412 U.S. at pp. 555-559 [37 L.Ed.2d at pp. 173-175].) Exercise of such power is not improper merely because it affects interstate commerce in some way. (*Head* v. *Board of Examiners* (1963) 374 U.S. 424, 429 [10 L.Ed.2d 983, 988, 83 S.Ct. 1759].) It will be found to place an undue burden on interstate commerce only if it: (1) discriminates against interstate commerce, or (2) operates to disrupt its required uniformity. (*Id.* at p. 429 [10 L.Ed.2d at p. 988]; *Huron Portland Cement Co.* v. *Detroit* (1960) 362 U.S. 440, 448 [4 L.Ed.2d 852, 859, 80 S.Ct. 813].)

Here it has not been suggested that the injunction discriminates against interstate commerce per se or that such restraint would not be applied to "any person" who so engaged in unfair competition within the State of California. There is also no basis for concern over disrupting national uniformity, where, in this area of unfair business practices, the similarity of federal and state law itself indicates both a common purpose and the lack of any conflict with national policy. (See *People* ex rel. *Mosk* v. *National Research Co. of Cal.,* 201 Cal.App.2d 765, 776-777 [20 Cal.Rptr. 516]; *Allied Artists Pictures Corp.* v. *Friedman,* 68 Cal.App.3d 127, 137 [137 Cal.Rptr. 94]; see also Copyright Act of 1909 (17 U.S.C. §§ 1, 101(e), 104) (as amended by Pub.L. No. 92-140 (1971)) sections which were in effect at all times relevant to injunctive relief in this case.) The injunctions do not violate the commerce clause.

B. *Copyright Clause*

■ Heilman contends that the State of California cannot "control" his advertisements because they were copyrightable under federal law. But Heilman was enjoined from advertising his products in California because the sale of his products in California was illegal unfair competition. The challenged injunction was not an attempt to regulate imitation of copyrightable advertisements. Nothing in the copyright law prevents California from restricting the solicitation of such illegal transactions. (See *Pittsburg Press Co.* v. *Human Rel. Comm'n.* (1973) 413 U.S. 376 [37 L.Ed.2d 669, 93 S.Ct. 2553]; contrast *Jacobs* v. *Robitaille* (D.C.N.H. 1976) 406 F.Supp. 1145, 1151-1153.)

## C. *First Amendment*

■ Heilman contends that the injunctions against him are unconstitutional, as it is now recognized that commercial speech is included in that category of speech which receives First Amendment protection. (See *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 762 [48 L.Ed.2d 346, 358, 96 S.Ct. 1817].) But prohibition of the solicitation of transactions which constitute illegal unfair competition raises a very different question than would the prohibition of dissemination of truthful and legitimate commercial information. (*Linmark Associates, Inc.* v. *Willingboro* (1977) 431 U.S. 85, 98 [52 L.Ed.2d 155, 165, 97 S.Ct. 1614]; *Pittsburg Press Co.* v. *Human Rel. Comm'n.*, *supra*, 413 U.S. at pp. 388-389 [37 L.Ed.2d at pp. 678-679].) An injunction may be imposed to forbid advertisements which proposed such illegal transactions. (*Ibid.*; *Bigelow* v. *Virginia* (1974) 421 U.S. 809, 828 fn. 14 [44 L.Ed.2d 600, 615 fn. 14, 95 S.Ct. 2222]; *Va. Pharmacy Bd.* v. *Va. Consumer Council, supra*, 425 U.S. at p. 759 [48 L.Ed.2d at p. 357]; *Carey* v. *Population Services International* (1977) 431 U.S. 678 [52 L.Ed.2d 675, 694, 97 S.Ct. 2010].)

## 5. *Damages*

■ (**See fn. 10.**) Heilman contends that: (a) there was no basis for the constructive trust placed on Heilman's gross receipts attributable to sales of recorded performances owned by A & M Records; (b) A & M Records was not entitled to recovery of damages except on sales which occurred in California; and (c) the trial court's grant of punitive damages was in error.[10] We hold these contentions to be without merit.

## A. *Constructive Trust*

It is uncontroverted that, with regard to the recordings pertinent to this appeal, A & M Records manufactured and owns the master recordings

---

[10]Heilman also contends that the punitive damage award was excessive. He bases this contention on assertions that the award was influenced by "passion and prejudice" and that the trial court improperly weighed the evidence of his net worth. But because the trial court is in a better position to determine whether a judgment was influenced by passion and is vested with the power to resolve issues of credibility, a failure to move for a new trial precludes an appellant from urging for such reasons that damages were excessive. Since Heilman made no motion for a new trial by reason of excessive damages, we may not review these contentions. (See *Topanga Corp.* v. *Gentile,* 1 Cal.App.3d 572, 577 [81 Cal.Rptr. 863]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.,* 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802].)

of the recorded performances duplicated by Heilman. These recorded performances are A & M Records' intangible personal property. (Pen. Code, § 653h, subd. (b); *Radio Corp. of America* v. *Premier Albums, Inc.* (1963) 19 App.Div.2d 62 [240 N.Y.S.2d 995, 997]; *Capitol Records* v. *Mercury Records Corporation* (2d Cir. 1955) 221 F.2d 657, 662-663.)

At the trial on the issue of damages the court determined that by rerecording and offering for sale performances owned by A & M Records, Heilman misappropriated and sold A & M Records' property. The court correctly found that such misappropriation and sale of the intangible property of another without authority from the owner is conversion. (*Swim* v. *Wilson,* 90 Cal. 126, 128 [27 P. 33]; *Miller* v. *Rau,* 216 Cal.App.2d 68, 77 [30 Cal.Rptr. 612].)

On this basis the trial court entered judgment against Heilman in an amount equal to the gross proceeds attributable to the sale of recorded performances which were the property of A & M Records.[11] One who misappropriates the property of another is not entitled to deduct any of the costs of the transactions by which he accomplished his wrongful conduct. (*Ward* v. *Taggart, supra,* 51 Cal.2d at p. 744.) When one acquires proceeds from the sale of property belonging to another the imposition of a constructive trust on the proceeds is a proper remedy. (Civ. Code, § 2224; *Church* v. *Bailey,* 90 Cal.App.2d 501, 504-505 [203 P.2d 547]; Bogert, Trusts and Trustees (2d ed. 1960) § 476, pp. 56-62.)

B.. *Calculation of Damages*

Heilman urges that a state's power to provide copyright protection is only local and cannot extend beyond its borders. He contends therefore that the calculation of damages should have been limited to Heilman's sales within the State of California.

---

[11]Also, the trial court found that due to defendants' inaccurate and incomplete books it was impossible to verify their alleged expenses. The court placed the burden of proof of these expenses on the defendants pursuant to its further finding that defendants alone possessed or had available information concerning the expenses they had incurred in their piracy and sales of recordings. (See Evid. Code, § 500; Cal. Law Revision Com. com. to Evid. Code, § 500; *Morris* v. *Williams,* 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].) Since the court found that defendants "failed to carry their burden of proof with respect to such costs and expenses," such costs and expenses would be entirely speculative. It would therefore be inequitable on this basis as well to permit Heilman to deduct them from A & M Records' recovery. (See *Ward* v. *Taggart,* 51 Cal.2d 736, 744 [336 P.2d 534].)

But the court did not award damages based on copyright infringement. Heilman's liability was imposed because he had engaged in unfair competition. A plaintiff suing on the basis of unfair competition has the right to seek relief for unfair competition committed in all states.[12] (Civ. Code, § 3333; *Cal. Prune etc. Assn.* v. *H. R. Nicholson Co.*, 69 Cal.App.2d 207, 224-225 [158 P.2d 764]; *Ojala* v. *Bohlin,* 178 Cal.App.2d 292, 301-302 [2 Cal.Rptr. 919].)

## C. *Punitive Damages*

The evidence in this case shows a continuous and intentional pattern of misappropriation of property owned by others. (Compare Pen. Code, § 653h.) It also shows contempt of court, hindered discovery, and an attempt to evade the injunctions of courts of this state as well as those issued by courts of Wisconsin. Under such circumstances a grant of punitive damages is clearly proper. (See *Ward* v. *Taggart, supra,* 51 Cal.2d at p. 743; *Southern Cal. Disinfecting Co.* v. *Lomkin,* 183 Cal.App.2d 431, 451 [7 Cal.Rptr. 43]; *Gai Audio of N. Y., Inc.* v. *Columbia Broad. Sys., Inc.* (1975) 27 Md.App. 172 [340 A.2d 736, 753-755].)

## DISPOSITION

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied December 28, 1977, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1978. Mosk, J., did not participate therein.

---

[12]We note that Heilman's and E-C Tapes' record of sales contained no geographical breakdown. Additionally, as previously noted, the trial court found that Heilman's and E-C Tapes' books were incomplete and unreliable. It would be inequitable to allow Heilman to reduce the judgment by speculating as to the existence of sales outside the State of California. (Civ. Code, § 3517.)