HENDRY, Judge.
This is an appeal from a Surcharge Order entered by the Probate Division of the Circuit Court for Dade County. We reverse, and remand for further evidentiary hearing.
Two years after the death of her husband, Roberta Corbin (appellee herein) was made personal representative of his estate. *732 A year later, an inventory of estate assets was filed upon the daughter’s (appellant’s) petition. Conspicuously absent therefrom was any reference to the decedent’s business enterprise.
It appears that appellee had attempted to establish her ownership of the business by reference to a purported bill of sale from the deceased; by final judgment of the circuit court entered upon a jury’s verdict, it was determined that the supposed sale was wholly ineffective as a transfer to ap-pellee. However, long before that adjudication, appellee had sold the business to a third party, reacquired an interest upon the buyer’s default on a note, and resold that interest.
The initial transfer was to one Charles A. Schultheis. Consideration for the transfer was $100,000, consisting of cash payments and adjustments, and a $75,000 note held by appellee.
It was found below that appellee actually collected only about $35,000 of the purchase price. The court ordered the return into the estate of the collected amount, less about $12,000 as compensation to appellee for running the business until the time of the transfer to Schultheis.
Appellant complains that the court below failed to order the return of profits and depreciation benefits taken by appellee pri- or to the sale to Schultheis, that appellee was not entitled to compensation for operating the business, and that appellee owed to the estate not what she had actually received from the sale, but rather what the estate lost when she sold the business-$100,000-plus interest from the time of the sale, and reimbursement for depreciation and other benefits not enjoyed by the estate since the sale.
An estate’s personal representative acts as a fiduciary of the beneficiaries, Dacus v. Blackwell, 90 So.2d 324 (Fla. 1956), and is, in practical effect, a trustee of an express trust. Beck v. Beck, 383 So.2d 268, 271 (Fla.3d DCA 1980). And it is clear that “[a] trustee should not be allowed to profit by failure to do that which the relationship requires be done.” Dacus, supra, 90 So.2d at 328. Indeed, “[n]o rule of law is better settled than that a trustee cannot use trust property or his relation to it for his personal advantage.” Jungbluth v. American Bank & Trust Co., 134 So. 618, 101 Fla. 785 (1931) (citation omitted).
By reference to those maxims, we would have no difficulty in divesting appel-lee of the benefits which accrued to her as the result of her malfeasance as personal representative. But appellant seeks damages for conversion as well, and in this unusual circumstance, we deem it inappropriate to impose redundant sanctions: Recovery may be had for the conversion, or for the breach of fiduciary trust, but not both.
Actions for conversion [1] may properly be brought for a wrongful taking over of intangible interests in a business venture. Accord, Cates v. Cates, 268 Ala. 6, 104 So.2d 756 (1958), amended after remand 272 Ala. 615, 133 So.2d 256 (1961); A & M Records, Inc. v. Heilman, 75 Cal.App.3d 554, 142 Cal.Rptr. 390 (Ct.App. 1977), appeal dismissed *733 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118, rehearing denied 439 U.S. 884, 99 S.Ct. 228, 58 L.Ed.2d 198 (1978); Miller v. Rau, 216 Cal.App.2d 68, 30 Cal.Rptr. 612 (Ct.App. 1963). Recovery properly extends to the good will of a business. Accord, Cates, supra, 104 So.2d at 760, and 133 So.2d at 259. Contra, cases collected in Prosser, Law of Torts 82, n.4 (4th ed. 1971).
The proper measure of damages for conversion in Florida is the interest’s reasonable market value, measured as of the time and place of conversion. Lilly v. Bronson, 177 So. 218, 129 Fla. 675 (1937); Doral Country Club, Inc. v. Lindgren Plumbing Co., 175 So.2d 570 (Fla.3d DCA), cert. denied 179 So.2d 212 (Fla. 1965), after remand to trial court 196 So.2d 242 (Fla.3d DCA 1967); Klein v. Newburger, Loeb & Co., 151 So.2d 879 (Fla.3d DCA), after remand 153 So.2d 344 (Fla.3d DCA 1963).
Although argument might well be made that lost profits and other special damages should be awarded in conversion cases, see Dobbs, Remedies, 408-11 (1973), we perceive such special damages to be reflected in an appropriate award of interest upon the general damage verdict.
Thus, we reverse, and remand for eviden-tiary hearing regarding the reasonable market value of the business at the time and place of its conversion; that value, plus interest up until the date of final judgment is entered upon remand, Klein, supra, 153 So.2d 344; contra, Gillette v. Stapleton, 336 So.2d 1226 (Fla.2d DCA 1976), shall constitute appellant’s award. Fees and costs regarding operation of the business after the time of conversion shall not be considered in computing the award.
Reversed and remanded.

. As Prosser, infra, at 81-83, notes, conversion evolved from the common law action of trover, application of which was limited in several respects, including one important sub judice: The action would lie only for the misappropriation of a tangible chattel. Over the years, courts additionally recognized as actionable abridgments of intangible rights, at least insofar as they might be identified with (or merged in) a document or other tangible chattel. Prosser comments:
There is perhaps no very valid and essential reason why there might not be conversion of an ordinary debt, the good will of a business, or even an idea, or “any species of personal property which is the subject of private ownership;” but thus far other remedies apparently have been adequate, and there has been no particular need or demand for any extension of the rather drastic relief of conversion beyond rights customarily represented by documents.
at 82-83 (footnotes omitted).
Here, where appellee has dispossessed the estate of a bundle of rights not immediately reducible to tangible form, and has done so in such fashion that restitution may well be an inadequate remedy, we are constrained to ignore what Prosser calls “this hoary limitation.” at 81.