Finally, defendants seek summary judgment on all counts.

Summary judgment is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discerible circumstances.

\* \* \* \* \* \*

... the Supreme Court set the standard that should be applied when one party to a lawsuit in federal court makes a motion for a summary judgment:

Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ.Proc. This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'

*Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014, 1015 (8th Cir.1973); *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).

 In the present case plaintiffs have alleged violations of the civil rights statutes, malicious prosecution, conspiracy, and outrageous conduct. Each of these charges are in themselves questions of fact in that their ultimate determination revolves on findings of motivation, intent, good-faith, and subjective feelings. The Eighth Circuit has determined that summary judgment is notoriously inappropriate for a determination of claims on which the issue of intent, good-faith, or other subjective feelings played dominate roles. *McGee v. Hester*, 724 F.2d 89, 91 (8th Cir. 1984). In this instance this Court finds summary judgment inappropriate due to the inherently factual nature of plaintiffs' claims and the belief that reasonable minds could differ as to defendants' culpability for their alleged actions.

Accordingly, defendants' motions will be granted in part and denied in part.

CBS, INC., Plaintiff,

v.

Charles GARROD, et al., Defendants.

No. 83-988 Civ-T-10.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 19, 1985.

Michael R. Carey, Barnett, Bolt & Russo, Tampa, Fla., for plaintiff.

David L. Partlow, Tampa, Fla., for defendants.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

HODGES, Chief Judge.

This is a diversity action in which Plaintiff, CBS, Inc. (hereinafter "CBS"), alleges that Defendants, Charles Garrod, et al. (hereinafter "Garrod"), engaged in unfair competition, conversion and statutory theft. Each cause of action alleges that Garrod engaged in record piracy by duplicating the impulses of certain master recordings belonging to CBS, and then transferring the duplicated impulses into "bootleg" phonographic records and tapes which were subsequently sold in competition with CBS. Plaintiff seeks both damages and injunctive relief.

By Order dated January 16, 1985, the Court bifurcated the damages issues from the liability and injunctive relief issues pursuant to Rule 42(b), F.R.Civ.P. Presently before the Court are the parties' cross motions for summary judgment and joint stipulation of facts on the issue of liability. Also to be considered is CBS' Motion to Strike Defendants' Third Affirmative Defense.

### Summary Judgment

Under Rule 56(c), F.R.Civ.P., the question is whether, on the facts stipulated, either party is entitled to judgment as a matter of law. In a diversity case, the substantive law applicable is that of the forum, which in this case is Florida. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir.1982).

The claims alleged by CBS—conversion, unfair competition and statutory theft—are all predicated on CBS having some protectible property interest. Defendants argue that CBS had no property interest in the records which Defendants copied. More specifically, Garrod argues that CBS either had no common law copyright in the records, or if it had, that the right was lost upon CBS' "publication" of the records through duplication and commercial sale.

### I. Common Law Copyright

The issue of common law copyright was previously raised in Defendants' Motion to Dismiss. It is also central to Defendants' Third Affirmative Defense which Plaintiff seeks to strike. Defendants claim that Fla. Stat. § 543.02 abolished all common law copyrights in Florida. However, this statute was repealed effective July 1, 1977. Laws of Florida, 1977, c. 77–440, § 1. Thus, the Court concluded in its Order of January 16, 1984 that § 543.02 "cannot now preclude this action."

■■■ Defendants' only new argument cites 73 Am.Jur.2d, *Statutes*, §§ 384–85, which provides in pertinent part:

> (T)he repeal of a statute renders it thenceforth inoperative, but it does not undo or set aside the consequences of its operation while in force.... A legal exemption from or limitation upon, liability on a particular demand, constituting a complete defense to an action, stands on quite as good ground as a right of action, and is not abrogated by a repeal of the statute *after accrual of the cause of action.*

*Id.* at § 385 (emphasis added). The Court agrees that repeal of a statute does not divest one of a defense which arose under the former statute. Thus, arguably, anyone who relied on § 543.02, Fla.Stat., to protect against a claim of common law copyright prior to July 1, 1977 may be protected.

However, since this is an action seeking damages and injunctive relief for future wrongdoings, Defendants have failed to state a reason why this Court should reverse its prior ruling that § 543.02 cannot preclude this action.

Defendants argue in the alternative that CBS lost its common law copyright by reason of publication. Defendants cite *DeSilva Construction Corp. v. Herrald*, 213 F.Supp 184 (M.D.Fla.1962), where an architect's plans were considered "published" after being filed with the city in order to obtain a building permit. *Herrald* must be distinguished from the instant case because architectural plans, unlike phono-records prior to February 15, 1972, are copyrightable. *Id.* at 193. There was ample protection available to plaintiff in *Herrald* by the simple device of complying with the notice requirements of the copyright statute. *Id.* at 195. Moreover, contrary to Defendants' contention, *Herrald* was not stating Florida law. *Id.* at 194.

■■■ Since there is no Florida law to point to the question of what constitutes publication of records, the Court finds persuasive the reasoning in *A & M Records, Inc. v. M.V.C. Distributing Corp.*, 574 F.2d 312 (6th Cir.1978). In *M.V.C.*, a producer of musical records sought damages and an injunction for unauthorized copying and sale of their records. In rejecting the defendant's argument that distribution of plaintiff's records constituted publication, the *M.V.C.* Court quoted *International News Service v. Associated Press*, 248 U.S. 215, 236, 39 S.Ct. 68, 71, 63 L.Ed. 211 (1918) to the effect that musical recordings, like wire service news reports, are "stock in trade, to be gathered at the cost of enterprise, organization, skill, labor, and money, and to be distributed and sold to those who will pay money for it, as for any merchandise." Unlike architectural plans where the common law copyright protects the idea rather than the blueprints and copies, a record producer's common law copyright protects the record itself, whether it is the master recording or a copy.

Adopting Defendant Garrod's argument that distribution of records constitutes publication would lead to inequitable results. No record producer would distribute a record until enough copies were made to sell to the entire market. Otherwise, a limited release of a record to a small market would be at great risk. If the record turns out to be a smash hit, anyone who could buy a copy could then mass-produce more copies and undersell the original producer (who, in addition to the expenses of copying, must also bear the costs of "enterprise, organization, skill, labor and money" of getting the musicians, music and recording time, *International News Service*, 39

S.Ct. at 71). Thus, because of the unique nature of the recording business, and the fact that there was no simple method of protecting record producers' interests until phono-records were protected by the Sound Recording Act of 1972, Public Law 92–140, § 3, 85 U.S. Stats. at Large 391, 392, CBS did not lose its common law copyright through publication by distribution of its records.* *See also United States v. Drum,* 733 F.2d 1503 (11th Cir.1984).

## II. Other Property Interests of CBS

■ Although the Court has ruled that Plaintiff did not lose its common law copyright interest in the records reproduced by Defendant, either through Fla.Stat. § 543.-02 or through publication, there is an additional ground for finding in favor of Plaintiff's having a protectible property interest. Specifically, *Mercury Record Productions, Inc. v. Economic Consultants, Inc.,* 64 Wis.2d 163, 218 N.W.2d 705 (1974), *appeal dismissed,* 420 U.S. 914, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975), citing *International News Service,* held in an analogous case that a record producer has an intangible property interest in their "professional investment of time, skill, and money in the recordings." *Mercury Record,* 218 N.W.2d at 714.

The Court in *Mercury Record* went on to hold that such a property interest is protectible under state law against "unfair competition ... appropriation, ... (and) larceny." *Id.* Thus, independent of its common law copyright, CBS also has a protectible property interest in the professional expertise invested in the recordings at issue in this case.

Having disposed of Defendants' Affirmative Defenses, the next question is whether Plaintiff has established Defendants' liability.

## III. Unfair Competition

■ By its decision in *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), the U.S. Supreme Court held that federal law did not preempt state law concerning phono-records "fixed" prior to February 15, 1972. Thus, Plaintiff must show both that Florida law provides a remedy and that Plaintiff is entitled to relief.

Both parties agree that Florida recognizes the tort of unfair competition. *B.H. Bunn Co., Inc. v. AAA Replacement Parts Co., Inc.,* 451 F.2d 1254 (5th Cir. 1971). However, the parties cannot agree as to the requisite elements for stating a claim of unfair competition. Defendants maintain that in Florida "the gist of unfair competition ... is 'palming off.'" *Id.* at 1262. This is clearly true in the area of trademark infringement; however, as the court in *Bunn* points out:

> Unfair competition is a broader area than trademark infringement. In the area of unfair competition the use of a similar mark may be probative of intent, of the defendant's state of mind. Intent has no relevance to trademark infringement, because customer confusion is the *sine qua non.* As in trademark infringement, intent is neither necessary to nor conclusive of unfair competition, but, unlike in trademark infringement, intent is probative of unfair competition.

451 F.2d at 1264; *see also Boston Professional Hockey Association Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 360 F.Supp. 459 (N.D.Tex.1973), *aff'd,* 510 F.2d 1004 (5th Cir.1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 *reh'g denied,* 423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975) (trademark case where the District Court found unfair competition while expressly finding no "palming off"). Where palming off is shown, there is a claim for unfair competition. However, the "gist" of unfair competition is more a question of defendant's intent which can be proved in other ways besides palming off. Moreover, in cases of unfair competition where

---

* Additional cases cited by Defendants on this issue are inapposite, as they deal with loss of the author's common law copyright to the recorded music or other performance on the record and not with the producer's rights to the record itself growing out of the producer's labor, expense, etc.

the basis of the complaint is not that defendant is selling his goods disguised as plaintiff's, but that defendant is misappropriating plaintiff's property, the test to be applied clearly does not require a showing of palming off. *International News Service*, 39 S.Ct. at 73.

Plaintiff urges a more liberal view of unfair competition as applied to unauthorized reproductions of phono-records. Although there is no Florida decision directly on point, the *Bunn* court recognized that Florida courts seek to apply the generally prevailing view of unfair competition. *Bunn*, 451 F.2d at 1262 n. 3. Thus, this Court adopts the prevailing view that the tort of unfair competition involving record piracy requires proof of three elements: (1) time, labor, and money expended by the plaintiff, (2) competition, and (3) commercial damage. *Mercury Record*, 218 N.W.2d at 709, citing *International News Service*, 39 S.Ct. 68.

Clearly all three elements are present in the instant case. CBS expended time, labor and money in making the records copied by Garrod. Stipulation at paragraph 18. Garrod did directly copy and sell records produced by CBS which CBS is either presently selling or seeking to sell in the future. Stipulation at paragraphs 18 and 25. And, "the damage to CBS from Defendants' Activities is irreparable and cannot be adequately measured or compensated by monetary damages." Stipulation at paragraph 29. Thus, based upon the law as stated above and the facts as set forth in the Stipulation, Plaintiff's Motion for Partial Summary Judgment on the claim of unfair competition, Count I of the Complaint, is hereby GRANTED.

## IV. Conversion

■ In Florida, an action for conversion will lie for a "wrongful taking of intangible interests in a business venture." *In re Estate of Corbin*, 391 So.2d 731, 732–33 (Fla. 3d DCA, 1980) and cases cited therein. The unfair competition found in Count I of this action involves a wrongful taking of CBS' recordings. It has already been es-

tablished that CBS has, and for all times relevant to this action has had, an intangible property interest in the time, effort and expense of producing the records at issue here. *See supra* Section II. Moreover, CBS has its common law copyright in the subject records. *See supra* Section I. Additionally, CBS' recordings are already part of a business venture, Stipulation at paragraphs 19 and 20, which were sold by Defendants for profit, Stipulation at paragraphs 10, 16, 18, 23 and 24. *See also A & M Records, Inc. v. Heilman*, 75 Cal.App.3d 554, 142 Cal.Rptr. 390 (Ct.App.1977), *appeal dismissed*, 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118, *reh'g denied*, 439 U.S. 884, 99 S.Ct. 228, 58 L.Ed.2d 198 (1978) (cited with approval in *Corbin*, 391 So.2d at 733). Thus, Plaintiff's Motion for Partial Summary Judgment on the claim of conversion, Count II of the Complaint, is hereby GRANTED.

## V. Statutory Theft

■ Plaintiff relies on Fla.Stat. § 812.-014(1) which provides in pertinent part that one is liable for theft if one "knowingly ... uses the property of another with intent to ... appropriate the property to his own use." Without re-examining all of the above discussion, the Court finds that Defendants' actions fall squarely within the confines of the Florida Statute defining theft. *See e.g.*, Sections I–III, *supra*, and paragraphs 10, 23 and 24 of the Stipulation. Thus, Plaintiff's Motion for Partial Summary Judgment on the claim of statutory theft, Count III of the Complaint, is hereby GRANTED.

## Conclusion

Consistent with the above rulings, the Court takes the following actions:

1. CBS' Motion for Partial Summary Judgment on Counts I–III of the Complaint is hereby GRANTED.

2. Defendants' Motion for Partial Summary Judgment is hereby DENIED.

3. The Plaintiff is directed to prepare and submit within ten (10) days a proposed form of final injunction.

IT IS SO ORDERED.