[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13100

_____

D.C. Docket No. 1:13-cv-23182-DPG

FLO & EDDIE, INC., a California corporation,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

versus

SIRIUS XM RADIO, INC., a Delaware corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2016)

Before HULL and ANDERSON, Circuit Judges, and ROTHSTEIN,[*] District
Judge.

ANDERSON, Circuit Judge:

_____

[*] Honorable Barbara J. Rothstein, United States District Judge for the District of
Columbia, sitting by designation.

Flo & Eddie, Inc. ("Flo & Eddie") appeals from a final order of the district court granting summary judgment in favor of Sirius XM Radio, Inc. ("Sirius"). We have had the benefit of oral argument and have reviewed the briefs and relevant parts of the record. As the case presents issues that have not been addressed by the Supreme Court of Florida, we believe the issues are appropriate for resolution by Florida's highest court and defer our decision in this case pending the certification of questions to the Supreme Court of Florida.

## I.  BACKGROUND

Plaintiff-Appellant Flo & Eddie is a California corporation. The principals of Flo & Eddie, Mark Volman and Howard Kaylan, have been performing music together as The Turtles since 1965 and have recorded numerous iconic hit performances. All of these performances were recorded before February 15, 1972.[1]

Defendant-Appellee Sirius is a satellite and internet radio provider that operates a nationwide broadcast service. Sirius broadcasts over 135 channels of music, sports, news, talk, and other entertainment content to its over 24 million subscribers. Notwithstanding the absence of any license or authorization from Flo & Eddie, Sirius broadcasts recordings of Turtles performances to its subscribers in Florida.

On September 3, 2013, Flo & Eddie filed the instant suit claiming that Sirius

---

[1]  Because Flo & Eddie's recordings were fixed before February 15, 1972, they enjoy copyright protection, if at all, pursuant to state law. See 17 U.S.C. § 301(c).

violated Flo & Eddie's rights as owner of sound recordings of musical performances that were fixed before February 15, 1972.  Flo & Eddie alleged that Sirius infringed its common law copyright in those sound recordings by making unauthorized public performances of the recordings over the internet and through its satellites and by making unauthorized reproductions of the recordings by creating buffer and back-up copies of the recordings on its servers and satellites. Based on these facts, the amended complaint alleged four causes of action: (1) common law copyright infringement, (2) common law misappropriation / unfair competition; (3) common law conversion; and (4) civil theft under FLA. STAT. § 772.11 for violations of FLA. STAT. § 812.014(1).  Flo & Eddie sought damages, including compensatory and punitive damages, and injunctive relief.

On July 15, 2014, Sirius moved for summary judgment on the issue of liability. After a hearing, the district court granted Sirius's motion for summary judgment. The district court's order concluded that Florida common law does not recognize an exclusive right of performance.  The district court further concluded that to the extent Florida recognizes an exclusive right to reproduce the recordings, that right was not violated by Sirius's buffer and back-up copies.  Finally, the district court concluded that the remaining non-copyright claims were dependent on the existence of a successful copyright claim. Accordingly, the district court granted Sirius's motion for summary judgment on all claims. On appeal, Flo &

3

Eddie challenges each of these conclusions.

## II.  DISCUSSION

We review the district court's grant of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294 (11th Cir. 2002). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court had jurisdiction of this suit under 28 U.S.C. § 1332(a). Therefore, in deciding this case, Florida substantive law applies.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

### A. Common Law Copyright

The first cause of action alleged by Flo & Eddie is infringement of its Florida common law copyright in its pre-1972 sound recordings. Flo & Eddie alleged two theories of infringement: (1) infringement of its exclusive right to reproduce the recordings; and (2) infringement of its exclusive right to publicly perform the recordings.

Although the state doctrine of common law copyright has been largely preempted by federal copyright law, this case falls into one of the limited areas in which state common law copyright may continue to operate: sound recordings

4

fixed prior to February 15, 1972. See 17 U.S.C. § 301(c).[2]  According to a leading treatise, "[i]n general, the rights under common law copyright rights are at least co-extensive with the rights commanded under the Copyright Act."  2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8C.02 (Matthew Bender, ed., 2016).  "Common law copyright thus protects against unauthorized reproduction of copies or phonorecords, unauthorized distribution by publishing or vending, and unauthorized performances."  Id.

The parties conceded at oral argument that there are no decisions of Florida courts addressing the existence vel non of a Florida common law copyright in sound recordings.  Nor are there any decisions addressing whether any such common law copyright in sound recordings would include the two constituent rights claimed here: the exclusive right of reproduction and the exclusive right of public performance.  At a motion hearing before the district court, Sirius characterized the current state of the case law as "a complete judicial void."

We first address the issue of an exclusive right of public performance and then the issue of an exclusive right of reproduction.

Although there are no decisions of the Supreme Court of Florida that are

---

[2] The sound recordings at issue here are to be distinguished from music compositions, i.e., the actual notation of the musical notes on a page. Music compositions are governed by federal copyright law, which has preemptive force. But sound recordings fixed prior to February 15, 1972, are not, and are expressly made subject to the common law or statutes of the respective states until a fairly remote fixed future date, at which time such state laws will be preempted. Id.; see also Goldstein v. California, 412 U.S. 546 (1973).

5

directly on point, we think that <u>Glazer v. Hoffman</u>, 16 So.2d 53 (Fla. 1943),

provides guidance on a possible direction of Florida common law.  Although

<u>Glazer</u> does not concern sound recordings, that case appears to recognize a Florida

common law copyright in another type of creative performance: magic tricks.

<u>Glazer v. Hoffman</u> was a suit by a Charles Hoffman, a magician and entertainer

also known as "Think-a-Drink Hoffman," for a permanent injunction against

Maurice Glazer, another magician and entertainer.  <u>Id.</u> at 53. Hoffman alleged that

Glazer had infringed his common law copyright. The complaint provided in

relevant part that "Hoffman, as a result of great labor, time and efforts, developed

and originated a performance by which he produced real, straight or mixed drinks

or beverages, such as high balls, cocktails, liquers [sic], zombies, coffee and ice

cream sodas from metal cocktail shakers which were shown to be empty and from

beakers filled with water, which drinks were thought of or requested by members

of his audiences."  <u>Id.</u> at 53–54. It was further alleged that Glazer "held himself out

as a magician and performer and acted under the name of 'Think-a-Drink Count

Maurice' and 'Have-a-Drink Count Maurice'; and that the several acts and

performances are imitations and violations of his rights and to the detriment and

damage of the plaintiff." <u>Id.</u> at 54. As described by the Supreme Court of Florida,

the parties' performances were as follows:

> [Hoffman's] performance, as reflected by the record, is substantially,
> viz.: He opens his performance with an address, professionally known

6

as 'patter'. The address appellee caused to be copyrighted. Subsequent to the 'patter' appellee proceeds to produce various cocktails, coffee, sodas and other drinks from pitchers, shakers, etc., and delivers these several drinks to the members of his audiences. These drinks are taken from 'seemingly' empty shakers and beakers. The mechanical equipment used and necessary for the sleight of hand performance given from time to time by the appellee is purchasable on the open market.

[Glazer's] act or performance consists of the use of similar mechanical equipment. He likewise attempts to deliver an address or professional 'patter' prior to the act or performance. He is able by sleight of hand performance to supply approximately any drink requested by the different members of his audiences. He points out that the act or performance is nothing more than a 'trick' or the common property of magicians.

Id. at 54.

Glazer, the defendant, appears to have argued that the drink pouring performance was not subject to copyright protection because it is "only a sleight of hand performance; that it has been in existence for many years and is as common as pulling rabbits out of hats or snakes out of pockets." Id. "The magician usually wears a frock coat; surrounds himself with attractive female assistants; assumes a serious, wise and important attitude, but on close analysis the mixed drink performance is the old sleight of hand trick." Id. Hoffman, relying *inter alia* on Waring v. WDAS Broadcasting Station, 194 A. 631 (Pa. 1937), argued that "the stunt is a child of his brain, created by heavy investments of time and labor, and therefore is an intellectual production protected by the common law." Id. at 55.

The Supreme Court of Florida, in holding or strong *obiter dicta*, agreed with

7

Hoffman. Although the sleight of hand performance was not subject to protection within the terms of the extant federal copyright statutes, the Supreme Court of Florida concluded that it was entitled to *prima facie* protection under Florida common law.  Specifically, the court concluded that "[i]t is true that an author at the common law has and owns a property right in his intellectual productions prior to publication or dedication to the public."  Id. at 55.

We think Glazer indicates that there is at least a significant argument that Florida common law may recognize a common law property right in sound recordings. Sound recordings, no less than magic tricks, are "intellectual productions" that are "created by heavy investments of time and labor."  Glazer's citation to Waring, in which the Supreme Court of Pennsylvania expressly held that an orchestra had "property rights at common law" in a musical performance recorded on a phonograph record, also suggests that Florida would recognize such property rights in sound recordings. Waring, 194 A. at 634–35.  Similarly, Glazer suggests that Florida common law would recognize that such a property right would include the claimed exclusive right of public performance.  Think-a-Drink Hoffman, after all, was seeking to enjoin Think-a-Drink Count Maurice from infringing upon his property rights by publicly performing the drink-pouring trick for profit.  16 So.2d at 53. So too, in Waring, the Supreme Court of Pennsylvania enjoined the defendant radio station from publicly broadcasting the recordings of

8

the orchestra's performances for profit.  194 A. at 634–35. Based upon <u>Glazer</u>,

there is at least a strong argument that Florida common law would recognize such

a common law property right in Flo & Eddie's sound recordings.

However, as <u>Glazer</u> also indicates, under Florida common law, a property

right in an intellectual production is neither unlimited nor indefeasible. Rather, any

such property right is delimited by the doctrine of publication, pursuant to which

the common law copyright may be terminated in whole or in part.  The Court in

<u>Glazer</u> explained that "[t]he record disclosed that Charles Hoffman, known as

'Think-a-Drink Hoffman', acted and performed his sleight of hand tricks or stunts

before many audiences since 1935." <u>Id.</u>  "On this record the conclusion is

irresistible that these several acts and performances are not only a publication but a

dedication to the public of the trick." <u>Id.</u>  Thus, "the trick or stunt became the

property of the general public, and the defendant below had a lawful right to use

the same." <u>Id.</u>

The Supreme Court of Florida has never had opportunity to address either

the existence <u>vel non</u> of common law copyright protection for sound recordings or

the doctrine of publication in the context of sound recordings.  If the rule

articulated in <u>Glazer</u> in the context of magic tricks—that there is copyright

protection for the performance of the magic trick but that the performance before

"many audiences" amounted to a publication for the purposes of divesting the

9

common law property right in the magic trick—should be extended to sound recordings, there is a significant issue as to whether Flo & Eddie may have lost any common law property in its sound recordings by publication thereof and dedication thereof to the general public.

Flo & Eddie claims not to have kept old records going back to the 1960s and objected to an interrogatory to identify the number of sales of each album containing any of the pre-1972 recordings on grounds that the request was irrelevant, overbroad, burdensome, or in excess of the limitations of Fed. R. Civ. P. 33(a)(1). Nonetheless, Mark Volman, principal of Flo & Eddie, testified that Flo & Eddie distributed and sold copies of its recordings in different formats through different record labels multiple times between approximately 1975 and 1985. Volman also testified that "[f]or the last four decades, Flo & Eddie has been exploiting The Turtles' master recordings by licensing the rights to make and sell records and licensing the rights for The Turtles' recordings to be used in movies, TV shows, and commercials."  Howard Kaylan, principal of Flo & Eddie, testified that The Turtles toured the world promoting The Turtles' recordings in the 1960s and that The Turtles currently continue to publicly perform their music in concerts. Indeed, Kaylan characterized The Turtles' recordings, including such "iconic" hits as Happy Together, as "clearly part of world history and not just American history."  These facts, among others in the record, suggest that to the extent that

10

public distribution and sale of a phonorecord, of performance thereof, constitutes publication of the sound recording therein under Florida common law, there is a strong possibility that any Florida common law copyright has been terminated by publication.

At least one other state, however, has articulated a different rule in the special context of the publication of sound recordings. Under New York common law, the public sale of a sound recording is not a general publication that ends common law copyright protection. Capitol Records, Inc. v. Naxos of America, Inc., 830 N.E.2d 250, 259 (N.Y. 2005). Rather, the "governing principle" in New York is that "where the originator, or the assignee of the originator, of records of performances by musical artists puts those records on public sale, his act does not constitute a dedication of the right to copy and sell the records." Id. at 260 (quoting Capitol Records v. Mercury Records Corp., 221 F.2d 657, 663 (2d Cir. 1955)).  According to the New York Court of Appeals, this approach "was consistent with the long-standing practice of the federal Copyright Office and became the accepted view within the music recording industry." Id.[3]  The New

---

[3] We note that the New York Court of Appeals relied on two law review articles for the apparent proposition that the public sale of a phonorecord containing a recording of a musical performance does not constitute publication for the purpose of terminating common law copyrights in the embedded sound recording.  See Capitol Records, Inc. v. Naxos of America, Inc., 830 N.E.2d 250, 260 (N.Y. 2005) (citing Mark A. Bailey, *Phonorecords and Forfeiture of Common-Law Copyright in Music*, 71 WASH. L. REV. 151, 171 (1996); Benjamin Kaplan, *Publication in Copyright Law: The Question of Phonograph Records*, 103 U. PA. L. REV. 469, 471 (1955)). On our review, it appears that both of these articles deal with the question of

York Court of Appeals further explained that this special protection afforded to sound recordings was justified by historical context: because sound recordings were long left unprotected by the federal copyright law, New York courts saw fit to provide broader common law protections. Id. It is true that the facts of Naxos involved record piracy (i.e., the defendant had copied one of plaintiff's records and was selling its copies to the public). Id. at 252. However, the holding with respect to publication and divestment was stated generally with regard to the "common law copyright protection," and not limited to the exclusive right of reproduction. Moreover, Sirius points to no principled reason why the sale of records might constitute only a limited publication and divestment with regard to the exclusive right of reproduction, but an absolute divestment with regard to the exclusive right of public performance. However, there may be other considerations at play. Although the underlying property right would seem to apply in both contexts, sale of records might well be deemed an abandonment of the right to publicly perform the records—even in wide distribution to the public for profit—while not being deemed an implied permission to copy and sell copied records.[4]

---

whether the public sale of a record constitutes publication of the *composition* embodied in the record and do not address the potentially distinct issue of publication of a *sound recording*.

[4] The parties also dispute the significance of the previous existence and repeal of FLA. STAT. § 543.02 (repealed 1977), which provided that when a phonograph record is sold for use in Florida, all common law rights to further restrict or to collect royalties on the commercial use of such records are abrogated. Again, the Florida courts have not addressed this issue.

12

Neither the Supreme Court of Florida nor any of the Florida District Courts of Appeal have addressed whether Florida common law would recognize copyright protection for sound recordings, and if so, whether the sales to the public of Flo & Eddie's sound recordings or the public performance thereof would constitute a publication or dedication to the public which would terminate the copyright protection in whole or in part.[5]

Turning now to Flo & Eddie's claimed exclusive right of reproduction, we noted above in note 5 that the federal district court opinion in Garrod provides some support for the proposition that Florida common law might recognize the

---

[5] In CBS v. Garrod, 622 F. Supp. 532 (M.D. Fla. 1988), and in the context of CBS's suit against defendant Garrod for record piracy, the federal district court addressed the issue of common law copyright protection under Florida law for sound recordings. The recordings apparently were pre-February 15, 1972, recordings because the court applied Florida common law, noting that phonorecords were not protected under the federal Sound Recordings Act until 1972. Id. at 535. The only issue before the court involved a claimed exclusive right of reproduction, and the court held that Florida common law provided that copyright protection for such sound recordings. The court also addressed the significance of CBS's previous sales of the records, and whether that constituted a publication causing a divestment of the common law copyright protection. In the record piracy context of that case, Garrod held that the distribution of the records did not cause CBS to lose its exclusive right of reproduction. Thus CBS retained its claim for relief against the defendant for reproducing (i.e., pirating) CBS's records. However, the court explicitly noted, but expressed no opinion with regard to, the issue of publication and divestment of "the author's common law copyright to the recorded music or other performance on the record." Id. at 535, n*. Thus, Garrod holds that such distribution does not effect a publication causing the wholescale divestment of the Florida common law copyright protection—i.e., the distribution did not divest CBS of its exclusive right of reproduction. But the court expressed no opinion as to the effect of the distribution on any exclusive right of performance. Garrod acknowledged that there was no Florida law on point with respect to its rulings about Florida common law copyright protection. Rather, the Garrod court relied upon equitable principles and the unique nature of the recording business. Id. at 534–35. Cf. Alticor Inc. v. Umg Recordings, Inc., No. 6:14-cv-542-Orl-37DAB, 2015 WL 8536571 (M.D. Fla. Dec. 11, 2015) (holding that Florida common law does not recognize a public performance right with respect to sound recordings).

copyright constituent right of exclusive reproduction.  Moreover, some support for that proposition might be provided by the fact that Florida's record piracy statute, FLA. STAT. § 540.11, criminalizes the reproduction of a sound recording with intent to sell or use same for profit through public performance. On the other hand, to the extent that Sirius is analogous to a radio broadcaster, § 540(6)(a) may suggest that its buffer and back-up copies are permissible.

The district court below implicitly assumed the existence of an exclusive right of reproduction that was not divested by publication, but held that Sirius's buffer and back-up copies did not constitute improper reproduction.  It relied on the Second Circuit's decision in Cartoon Network, LP v. CSC Holdings, Inc., 536 F.3d 121, 125–27 (2d Cir. 2008), holding that a buffer copy does not infringe. However, the court in Cartoon Network relied on a close textual interpretation of the term "copy" in the relevant provision of the Federal Copyright Act.  It is not clear to us whether the same result would be reached under Florida common law copyright. We observe that Florida's criminal record piracy statute, FLA. STAT. § 540.11, does not contain language parallel to the Federal Copyright Act's requirement that an infringing "copy" be "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."  Compare FLA. STAT. § 540.11(2)(a) with 17 U.S.C. § 101.  However, the district court also relied on the Second Circuit's

14

decision in <u>Authors Guild, Inc. v. HathiTrust</u>, 755 F.3d 87 (2d Cir. 2014), which extensively described and applied the fair use doctrine under the Federal Copyright Act. In other words, the district court in this case implicitly held that Sirius's buffer and back-up copies were not infringing based on the fair use doctrine.[6] Again, neither the Supreme Court of Florida nor any of the Florida District Courts of Appeal have addressed whether, assuming there is a Florida common law right of exclusive reproduction that is not divested by publication or public dedication, the same is infringed by Sirius's buffer and back-up copies.

Because Florida law is not clear on these matters, we certify to the Supreme Court of Florida the questions of whether Florida common law copyright extends to pre-1972 sound recordings and, if so, whether it includes an exclusive right of public performance and/or an exclusive right of reproduction. We also certify the question of whether Flo & Eddie has forfeited any common law copyright by publication. Additionally, to the extent that Florida recognizes a common law copyright in sound recordings including a right of exclusive reproduction, we certify the question of whether the backup or buffer copies made by Sirius constitute infringement of Flo & Eddie's common law copyright.

B. <u>Other Claims</u>

In addition to the Florida common law copyright claims, Flo & Eddie also

---

[6] We reject Flo & Eddie's argument that Sirius waived reliance on the doctrine of fair use.

alleges unfair competition / misappropriation, conversion, and civil theft.

As an initial matter, the parties dispute whether these remaining claims are dependent on the existence of a common law copyright in the recordings. Sirius claims, and the district court agreed, that Flo & Eddie's unfair competition, conversion, and civil theft claims must fail as a matter of law because Florida does not recognize a common law copyright in sound recordings that includes an exclusive right of performance and that, to the extent Florida recognizes an exclusive right of reproduction, Sirius's conduct did not constitute infringement. In other words, Sirius argues, and the district court agreed, that these remaining claims are "based on" Flo & Eddie's alleged common law copyright, and because there was no infringement of any common law copyright, the remaining claims must fail.

Flo & Eddie argues that these non-copyright tort claims are not derivative of, or dependent upon, the existence of a common law copyright. Rather, Flo & Eddie claims that it may maintain freestanding unfair competition / misappropriation, conversion, and civil theft claims separate and apart from any claim for common law copyright infringement. Because Florida law is not clear on this matter, we certify to the Supreme Court of Florida the question of whether an action for unfair competition / misappropriation, conversion, or civil theft of a sound recording may lie in the absence of an enforceable copyright.

16

### III. QUESTIONS TO BE CERTIFIED

When significant doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid engaging in unnecessary speculation. See, e.g., Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913, 916–17 (11th Cir. 1995).

Accordingly, we respectfully certify the following questions of law to the Supreme Court of Florida:

1. Whether Florida recognizes common law copyright in sound recordings and, if so, whether that copyright includes the exclusive right of reproduction and/or the exclusive right of public performance?

2. To the extent that Florida recognizes common law copyright in sound recordings, whether the sale and distribution of phonorecords to the public or the public performance thereof constitutes a "publication" for the purpose of divesting the common law copyright protections in sound recordings embedded in the phonorecord and, if so whether the divestment terminates either or both of the exclusive right of public performance and the exclusive right of reproduction?

3. To the extent that Florida recognizes a common law copyright

17

including a right of exclusive reproduction in sound recordings, whether Sirius's back-up or buffer copies infringe Flo & Eddie's common law copyright exclusive right of reproduction?

4.    To the extent that Florida does not recognize a common law copyright in sound recordings, or to the extent that such a copyright was terminated by publication, whether Flo & Eddie nevertheless has a cause of action for common law unfair competition / misappropriation, common law conversion, or statutory civil theft under FLA. STAT. § 772.11 and FLA. STAT. § 812.014?[7]

Our phrasing of these questions is not intended to limit the Supreme Court of Florida in considering the issues presented.  The entire record in this case and the briefs of the parties shall be transmitted to the Supreme Court of Florida for assistance in answering these questions.[8]

---

[7] In the event the Supreme Court of Florida holds that there are common law copyright protections for sound recordings that are not divested by publication, and defines the scope thereof, the Court may prefer not to address the significance of any such property interest with respect to Flo & Eddie's other claims (e.g., common law unfair competition / misappropriation, conversion, and civil theft). The Court may prefer that the district court address same in the first instance.

[8] We note that Sirius also claims that the recognition of a Florida common law copyright in sound recordings including an exclusive right of public performance would violate the dormant Commerce Clause. The question of whether such a right would violate the dormant Commerce Clause is not something we can adjudicate without knowing what, if any, rights exist. See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579 (1986) (recognizing that "no clear line separat[es]" state regulation that is per se invalid and activity subject to Pike balancing, and stating that "the critical consideration is the overall effect of the statute on both local and interstate activity"); Pike v. Bruce Church, Inc., 397 U.S. 137, 142

18

QUESTIONS CERTIFIED.

---

(1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."). Because we must know what rights are provided under Florida common law to determine whether the dormant Commerce Clause is violated, we are unable to reach this issue at this stage. To the same effect, see Flo & Eddie, Inc. v. Sirius XM Radio, Inc., No. 15–1164–cv., 2016 WL 1445100, at *4 (2d Cir. Apr. 13, 2016).