**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

FLO & EDDIE, INC., a
California corporation,
individually and on behalf of
all others similarly situated,
          *Plaintiff-Appellee*,


                    v.


PANDORA MEDIA, INC., a
Delaware corporation,
          *Defendant-Appellant*.

</td>
<td>

No. 15-55287

D.C. No.
2:14-cv-07648-PSG-RZ


ORDER REQUESTING
CERTIFICATION TO
THE CALIFORNIA
SUPREME COURT

</td>
</tr>
</table>

Filed March 15, 2017

Before: Stephen Reinhardt and Richard A. Paez, Circuit
Judges, and Paul L. Friedman,[*] District Judge.

Order

---

    [*] The Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

## SUMMARY[**]

### Certification to California Supreme Court

The panel certified the following questions of state law to the California Supreme Court:

1. Under section 980(a)(2) of the California Civil Code, do copyright owners of pre-1972 sound recordings that were sold to the public before 1982 possess an exclusive right of public performance?

2. If not, does California's common law of property or tort otherwise grant copyright owners of pre-1972 sound recordings an exclusive right of public performance?

### ORDER

We certify the questions set forth in Part II of this order to the California Supreme Court.  All further proceedings in this case are stayed pending final action by the California Supreme Court, and this case is withdrawn from submission until further order of this court.

### I. Administrative Information

We provide the following information in accordance with Rule 8.548(b)(1) of the California Rules of Court.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The caption of this case is:

No. 15-55287

Flo & Eddie, Inc.,

Plaintiff and Appellee,

v.

Pandora Media, Inc.,

Defendant and Appellant.

The names and addresses of counsel are:

*For Plaintiff-Appellee Flo & Eddie*: Henry Gradstein, Maryann R. Marzano, Harvey Geller, Daniel B. Lifschitz, Gradstein & Marzano, P.C., 6310 San Vicente Boulevard, Suite 510, Los Angeles, California, 90048.

*For Defendant-Appellant Pandora Media*: James K. Lynch, Andrew M. Gass, Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, California, 94111; Gregory G. Garre, Jonathan Y. Ellis, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C., 20004.

## II. Certified Questions

Pursuant to Rule 8.548(b)(2) of the California Rules of Court, we respectfully request the Supreme Court of California to decide the certified questions presented below. There is no controlling precedent regarding the certified

questions, the answers to which will determine the outcome of this appeal, dispose of Flo & Eddie's underlying claims, and resolve an important area of California state law. The questions certified are as follows:

1.  Under section 980(a)(2) of the California Civil Code, do copyright owners of pre-1972 sound recordings that were sold to the public before 1982 possess an exclusive right of public performance?

2.  If not, does California's common law of property or tort otherwise grant copyright owners of pre-1972 sound recordings an exclusive right of public performance?

### III. Statement of Facts

Appellee Flo & Eddie is a corporation created by two founding members of The Turtles, a 1960s folk rock band best known for the hit song "Happy Together." Flo & Eddie allegedly acquired the rights to a number of The Turtles' pre-1972 sound recordings, which it has licensed to music, film, and internet companies for various uses.

Appellant Pandora is an online radio service that allows users to stream music on internet-connected devices, including, until recently, The Turtles' music. Pandora has not paid Flo & Eddie for the public performance[1] of its sound

---

[1] California courts have not defined "public performance." Under current federal law, public performance means "to perform or display [a recording] at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered," or "to transmit or otherwise communicate a

recordings, nor does it generally do so for performers of pre-1972 sound recordings.

On October 1, 2014, Flo & Eddie filed an action[2] for damages against Pandora for publicly performing The Turtles' pre-1972 sound recordings on its services without paying royalties.  Flo & Eddie alleged that these sound recordings were protected under section 980(a)(2) of the California Civil Code, as well as the state's common law.

Originally enacted in 1872, and amended in 1947 and 1982, section 980 has undergone, at times, substantial revision that may bear on the merits of Flo & Eddie's claims.

---

performance or display of the work to . . . the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."  17 U.S.C. § 101.

[2] Prior to filing this case, Flo & Eddie filed similar actions against online radio service Sirius XM in federal court in California, *see Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-5693 PSG (RZx), 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014); in New York, *see Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 821 F.3d 265 (2d Cir. 2016); and in Florida, *see Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016 (11th Cir. 2016).  Sirius XM appealed adverse rulings in both the New York and Florida cases, after which the Second and Eleventh Circuits certified questions of state law to the New York Court of Appeals and Florida Supreme Court, respectively.  The New York Court of Appeals recently answered the certified question, holding that New York's common law of copyright does not recognize an exclusive right of public performance for copyright holders. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 172, 2016 WL 7349183 (N.Y. Dec. 20, 2016).  As a result, the Second Circuit reversed the district court's order denying summary judgment to Sirius XM and directed the district court to grant summary judgment and dismiss the case with prejudice. *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 15-1164-CV, 2017 WL 629261, at *2 (2d Cir. Feb. 16, 2017).

We therefore briefly summarize the evolution of state and related federal law, as relevant to the parties' arguments.

## A.

At the time The Turtles were recording and releasing music in the 1960s, section 980(a) codified what was known as "common law copyright." It granted the "author or proprietor of any composition in letters or art . . . an exclusive ownership in the representation or expression thereof as against all persons except" cover artists. Cal. Civ. Code § 980(a) (1949). At the same time, section 983(a) of the California Civil Code divested any common law rights once "the owner of a composition in letters or arts publishe[d] it." Cal. Civ. Code § 983(a) (1949). Upon publication, "the same [could] be used in any manner by any person, without responsibility to the owner, insofar as the law of this State is concerned." *Id.*

The California legislature originally adopted this language in 1947, seemingly "to remove ambiguities in the State law and *to bring the California statute into accord with federal law* and judicial precedent within and without California." Memorandum from Beach Vasey, Legislative Sec'y, State of Cal., to Governor Earl Warren (July 3, 1947) (emphasis added). The "federal law" in force at time of adoption and through the 1960s was the Copyright Act of 1909, which, like the California copyright statutes, did not expressly mention sound recordings.

Rather, the 1909 Act differentiated between unpublished and published works. Unpublished works were left to the protection of the common law, unless registered for federal protection. *See Twin Books Corp. v. Walt Disney Co.*, 83

F.3d 1162, 1165 (9th Cir. 1996) ("Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme."). Upon publication *with* proper copyright notice, federal protection automatically attached and common law protection terminated. Works that were published *without* proper copyright notice irrevocably entered into the public domain. *See Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1226 (9th Cir. 1998) (explaining that, under the 1909 Act, "[s]tate 'common law' protection attached upon creation of the work and ended with publication of the work. Once published, the only protection available was federal statutory copyright. Publication of a work with proper notice secured the statutory copyright."). The 1947 amendments to California's copyright statutes therefore reflected this schema by divesting common law copyright protection at the point of publication. Cal. Civ. Code § 983(a) (1949).

In 1978, however, this schema changed. Congress overhauled federal copyright law. Rather than limiting federal copyright protection only to works that were published with proper notice, the Federal Copyright Act of 1976[3] expanded federal protection to any works fixed in a tangible medium of expression—thereby preempting common law protection for fixed, but still unpublished works. *See* Federal Copyright Act of 1976, Pub. L. No. 94-553, § 102(a), 90 Stat. 2541, 2592 (1976); *Batjac Prods.*, 160 F.3d at 1226 ("Under the 1976 Act, unpublished works lost their common law protection but gained statutory protection.").

---

[3]  The 1976 Act became effective on January 1, 1978. 17 U.S.C. § 301(a).

The 1976 Act expressly exempted pre-1972 sound recordings from this new federal protection, however. 17 U.S.C. § 301(c). Instead, the 1976 Act left the common law in place to protect pre-1972 sound recordings. *Id.* ("With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067.").

In response, the California legislature repealed the divestiture-by-publication rule of section 983 and again amended section 980(a), dividing it into two subsections. Since then, section 980(a)(2) has granted the "author of . . . a sound recording initially fixed prior to February 15, 1972 . . . an exclusive ownership therein until February 15, 2047, as against all persons except" cover artists.[4] Cal. Civ. Code § 980(a)(2). Whether section 980(a)(2) or California

---

[4] Specifically, section 980(a)(2) grants "exclusive ownership" as against all persons except

> one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

Cal. Civ. Code § 980(a)(2). In *Sirius*, the district court interpreted this language as an exception for artists creating "covers," defined as "recording the song with new instruments." *Flo & Eddie*, 2014 WL 4725382, at *5 ("In other words, ownership of a sound recording does not include the exclusive right to make 'covers' (i.e., recording the song with new instruments) . . . so long as they produce the sounds independently rather than recapture the actual sounds in the copyrighted recording.").

common law extend an exclusive right of public performance to owners of pre-1972 sound recordings is the subject of this lawsuit.

## B.

After Flo & Eddie filed the present lawsuit, Pandora filed a motion to strike under California's statute against "strategic litigation against public participation," or SLAPP.[5]  Pandora argued that section 980(a)(2) does not even apply to The Turtles' recordings since, under section 983(a), those recordings entered the public domain at the point of publication back in the 1960s.  Relying on the legislative

---

[5]  "The analysis of an anti-SLAPP motion . . . involves two steps. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity.  If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1120 (2011) (internal quotation marks and citation omitted); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 901–02 (9th Cir. 2010).  "To satisfy the second prong, . . . . the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  *Oasis*, 250 P.3d at 1120.  Here, the parties relied solely on the factual allegations in the complaint.  Thus, the issues are presented as pure questions of law, and are therefore particularly suited for certification.

Moreover, an answer to the certified questions in this case would resolve the merits of Flo & Eddie's claims alleging violations of an exclusive right to public performance under both section 980(a)(2) and California common law.  Thus, although the issue before our court is in the context of an appeal from the denial of an anti-SLAPP motion, a ruling on the certified questions would not only dispose of the appeal from the collateral order, but would also resolve the underlying claims.

history of section 980, Pandora further argued that the California legislature in 1982 did not intend to create protection for sound recordings that had previously entered the public domain when it adopted section 980(a)(2). Even if it did, Pandora argued, the legislature did not intend that protection to include a public performance right.

Flo & Eddie opposed the motion, arguing that the plain language of section 980 gave it "exclusive ownership" over The Turtles' pre-1972 sound recordings, including a public performance right. Flo & Eddie further argued that the repeal of section 983 made that provision irrelevant. Even if it had never been repealed, Flo & Eddie argued, section 983 never applied to its sound recordings because (1) The Turtles' records were not "published" for the purposes of California law, and (2) section 983 applied only to compositions.

The district court rejected Pandora's arguments and denied the motion to strike, reasoning that Pandora's reading of section 980(a)(2) would lead to absurd results. *Flo & Eddie, Inc. v. Pandora Media, Inc*., No. CV 14-7648 PSG (RZx), 2015 U.S. Dist. LEXIS 70551, at *22–23. The court ruled that California law had historically protected sound recordings even after publication via the common law. *Id*. at *24–28. Reading that protection into the text of section 980(a)(2), the court concluded that the statute protected published pre-1972 recordings and granted Flo & Eddie a property right in the public performance of its sound recordings. *Id*. at *27–29. On the basis of that property right, the district court further held that Flo & Eddie's claims for misappropriation, conversion, and unfair competition were legally sufficient for the purposes of the anti-SLAPP statute. *Id*. at *29. Pandora timely appealed. *See DC Comics v. Pac. Pictures Corp*., 706 F.3d 1009, 1016 (9th Cir. 2013) (holding

that an order denying a special motion to strike under California's anti-SLAPP law is immediately appealable in federal court pursuant to the collateral order doctrine).

## IV. The Need for Certification

Certification is warranted if there is no controlling precedent and the California Supreme Court's decision could determine the outcome of a matter pending in our court. *See* Cal. R. Ct. 8.548(a). This appeal not only meets both criteria, but also presents an issue of significant public importance.

Indeed, the "significant and unresolved" nature of the issue prompted the United States Court of Appeals for the Second Circuit to certify a similar question to the New York Court of Appeals in Flo & Eddie's case against Sirius XM. *Flo & Eddie*, 821 F.3d at 267. The Court of Appeals accepted the certified question, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 52 N.E.3d 240 (2016), and resolved it in view of the fact that its decision could have "extensive and far-reaching" consequences given the "many competing interests at stake," *Flo & Eddie*, 2016 WL 7349183.[6]

Faced with "a complete judicial void" in Florida case law, the United States Court of Appeals for the Eleventh Circuit likewise certified similar questions to the Florida Supreme Court in another Flo & Eddie case against Sirius XM. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016,

---

[6] In that case, the court held that copyright holders do not have a right of public performance under New York common law. *Flo & Eddie*, 2016 WL 7349183. Accordingly, the Second Circuit directed the district court to grant summary judgment to Sirius XM and dismiss the case with prejudice. *Flo & Eddie*, 2017 WL 629261, at *2.

1020 (11th Cir. 2016). The Florida Supreme Court has accepted the certified questions and set oral argument for later this year. *See* Scheduling Order, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. SC16-1161 (Fla. Jan. 30, 2017).

We agree with our sister circuits that certification is the best way to proceed on these issues, especially in California. As an incubator of both musical talent and technological innovation, California has a significant interest in the appropriate resolution of the certified questions. Resolution of these questions will likely affect the state and industries within the state in a variety of ways, and is therefore best left to the California Supreme Court.

### A.

No controlling precedent resolves the certified questions. *Capitol Records, Inc. v. Erickson*, 82 Cal. Rptr. 798 (Ct. App. 1969) and *A & M Records, Inc. v. Heilman*, 142 Cal. Rptr. 390 (Ct. App. 1977) predate the adoption of section 980(a)(2), and therefore cannot aid us in resolving the first certified question. *Erickson* and *Heilman* also address only common law liability for piracy, the unauthorized duplication and distribution of sound recordings for profit. Public performance was not at issue in either case, thereby rendering them unhelpful in resolving the second certified question as well. As such, there is no precedent, much less controlling precedent, from either the California appellate courts or the California Supreme Court to guide our court's inquiry.

Flo & Eddie's central argument is that California's plain meaning rule for interpreting statutes resolves the first certified question. *See, e.g.*, *People v. Canty*, 90 P.3d 1168, 1172-73 (Cal. 2004). Applying the rule, Flo & Eddie

contends that the "exclusive ownership" term in section 980(a)(2) allows copyright owners to exclude all unauthorized uses, including public performance. But the statute does not define "exclusive ownership" or "ownership." And while undefined terms are given their ordinary meanings, as appropriate to the context, *see Martinez v. Vaziri*, 200 Cal. Rptr. 3d 884, 891 (Ct. App. 2016) (refusing to construe an undefined phrase in isolation "because as a matter of basic statutory interpretation, the words must be construed in context"), it could well be said that the "ordinary meaning" of "exclusive ownership" in the context of copyright is at the very heart of the dispute in this case.

That section 980(a)(2) includes an exception for cover artists does not make the meaning of "exclusive ownership" plain. The exception only establishes that the "ownership" rights granted by the statute do not include rights to control cover artists; it does not establish what "ownership" rights are included in the first instance. The canons of statutory interpretation are therefore insufficient to aid in the resolution of this case, and do not eliminate the need for clear guidance from California's highest court.[7]

---

[7] The only California case that has touched on the issue is *Capitol Records, LLC v. Sirius XM Radio, Inc.*, No. BC520981, 2014 WL 7150014 (Cal. Super. Ct. Dec. 5, 2014), a Los Angeles County Superior Court case. Seemingly confirming the lack of sufficient guidance from California appellate courts, the *Capitol Records* court issued a tentative ruling refusing to recognize a public performance right in a jury instruction only to reverse the ruling after the Central District of California reached the opposite conclusion in *Sirius*. The issue was never resolved, however, as the case later settled.

Pandora maintains that Flo & Eddie's sound recordings lost state copyright protection upon publication in the 1960s, and that the 1982 amendment adopting section 980(a)(2) did not resurrect copyright protection. But this argument depends on an interpretation of the 1947 versions of sections 980(a) and 983(a), which have likewise never been considered by the California Supreme Court. Accordingly, Flo & Eddie cites only off-point lower court cases and out-of-state authority[8] for its counter-argument that the divestiture-by-publication rule of the 1947 version of section 983(a) did not apply to sound recordings.[9]

---

[8] Flo & Eddie cites one case within our circuit, *Capital Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010). Otherwise, Flo & Eddie cites cases from New York, *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 101 N.Y.S.2d 483 (Sup. Ct. 1950); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540 (2005), from Florida, *CBS, Inc. v. Garrod*, 622 F. Supp. 532 (M.D. Fla. 1985), from Michigan, *A & M Records, Inc. v. M.V.C. Distrib. Corp.*, 574 F.2d 312 (6th Cir. 1978), from Wisconsin, *Mercury Record Prods. v. Econ. Consultants, Inc.*, 218 N.W.2d 705 (Wis. 1974), and from Pennsylvania, *Waring v. WDAS Broadcasting Station, Inc.,* 194 A. 631 (Pa. 1937).

[9] At oral argument, the parties focused on the meaning and impact of the out-of-state case *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2d Cir. 1940), and the duo of cases that were purported to "overrule" it: *Capitol Records, Inc. v. Mercury Records, Corp.*, 221 F.2d 657 (2d Cir. 1955) and *Metro. Opera*, 101 N.Y.S.2d 483. In a recent decision, the New York Court of Appeals decisively resolved the dispute. The court held that *Mercury Records* did not overrule the underlying premise of *Whiteman*, and held that no right of public performance existed under New York common law copyright. *See Flo & Eddie*, 2016 WL 7349183.

In *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984),[10] as Pandora points out, we addressed a similar situation. There, we concluded that broadcast tapes of the Lone Ranger radio show leased to radio stations and sold to the public in the 1950s and 1960s had lost common law or state copyright protection upon general publication under section 983, despite its later repeal. Although binding precedent for our court, *Lone Ranger* was a case about piracy. It therefore does not help us resolve whether the California legislature intended to grant a right of *public performance* to owners of pre-1972 sound recordings when it explicitly extended copyright protection to sound recordings with the adoption of section 980(a)(2) in 1982. Nor does it resolve whether California's common law of copyright guarantees a right of *public performance*, in addition to protecting against piracy.

**B.**

Resolving these questions will dispose of this appeal and determine the merits of Flo & Eddie's underlying claims. The district court concluded that section 980(a)(2) granted owners of pre-1972 sound recordings a property right in the public performance of their recordings. On the basis of that property right, the district court further concluded that Flo & Eddie's claims of misappropriation, conversion, and unfair competition were legally sufficient. If either section 980(a)(2) or California common law does provide an exclusive right of public performance, the district court's ruling must be affirmed, and Flo & Eddie's claims granted.

---

[10] Our opinion acknowledged that this case was decided after section 980(a)(2) had been enacted and section 983 had been repealed. *Lone Ranger*, 740 F.2d at 725.

If neither section 980(a)(2) nor California common law provides such a right, the district court's ruling must be reversed, and the underlying claims must be dismissed.

We therefore conclude that this case presents prime questions for the California Supreme Court to address. *See* Cal. R. Ct. 8.548(a). The answers given by the California Supreme Court will dispose of this appeal currently pending before the Ninth Circuit. We agree to accept the court's answers.

## V. Accompanying Materials

The clerk of this court is hereby directed to file in the California Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of record, and an original and ten copies of the request with a certification of service on the parties, pursuant to California Rules of Court 8.548(c), (d).

The panel will only resume control and jurisdiction of this case upon receiving a decision from the California Supreme Court or upon that court's decision to decline to answer the certified questions. The parties shall file a joint report informing this court of whether the California Supreme Court has accepted the certified questions, after that determination is made. If the California Supreme Court accepts the certified questions, the parties shall file a joint status report to our court every six months after the date of acceptance.

**IT IS SO ORDERED.**